IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| **LAURI LITTLEWOOD,**<br>4452 Terry Lake Rd<br>Fort Collins, CO 80524,<br><br>*Plaintiff*,<br><br>v.<br><br>**NOVARTIS PHARMACEUTICALS CORP.,**<br>59 Route 10<br>East Hanover, NJ 07936<br><br>Serve Registered Agent:<br><br>Corporation Service Company,<br>1900 W. Littleton Boulevard<br>Littleton, CO 80120<br><br>*Defendant*. | Civil Action No.: _____<br><br>**JURY TRIAL DEMANDED** |

CIVIL COMPLAINT FOR EQUITABLE AND
MONETARY RELIEF AND DEMAND FOR JURY TRIAL

Plaintiff Lauri Littlewood, by and through the undersigned counsel, files this civil complaint and demand for jury trial against Defendant Novartis Pharmaceuticals Corporation for violations of the Equal Pay Act of 1963, 29 U.S.C. § 206(d) (EPA).

**JURISDICTION AND VENUE**

1. This Court has subject matter jurisdiction of this case under the Equal Pay Act of 1963, 29 U.S.C. § 206(d), and pursuant to 28 U.S. Code § 1331.

2. This Court has personal jurisdiction over Defendant because it has substantial business contacts with and conducts business in this federal judicial District.

1

3. Venue properly lies within this District under 28 U.S. Code § 1391(b)(2) as the unlawful employment practices committed by Defendant occurred in this District.

## PARTIES

4. Plaintiff Lauri Littlewood is a resident of Fort Collins, Colorado, and worked as an executive sales representative at Novartis until her termination on or about December 10, 2020.

5. Defendant Novartis Pharmaceuticals Corporation is a Delaware corporation that conducts business in the State of Colorado.

## FACTUAL ALLEGATIONS

6. Littlewood is a 54-year-old female with twenty-five years of experience in pharmaceutical sales.

7. On or about April 2015, Novartis hired Littlewood to serve as an executive cardiovascular sales representative to sell a heart failure medication called Entresto.

8. Littlewood worked from her home in Fort Collins, Colorado for Novartis as an executive sales representative, and her job required her to travel to hospitals in her territory, including Wyoming, Nebraska, and Colorado.

9. Between June and September 2020, Angella King, Novartis's regional manager, advised Samantha Parisi, an institutional sales specialist, that Parisi and Littlewood needed to promote themselves because Regional Manager Tim Vannaman "was not inclined to promote women."

10. Novartis conducts employee evaluations on a scale of 1 to 3, with 3 being the highest rating given to 10-15% of sales representatives. Evaluations consist of two categories: performance, which includes meeting sales goals, and values and behaviors,

which includes an assessment of collaboration, innovation, courage, performance, and integrity.

11. In 2019, Novartis rated Littlewood a "2.2" in her employee evaluation. Littlewood had always been rated a 2 or better for values and behaviors.

12. In or about early March 2020, Novartis refused to pull sales representatives from the field in response to the COVID-19 pandemic even though other pharmaceutical companies halted in-person meetings between sales representatives and hospitals.

13. In or about mid-March 2020, Littlewood called her direct supervisor, John Gatrell, and reported that she was uncomfortable going into the field due to COVID-19 risks. The cardiac patients that Littlewood serviced were at high risk for COVID-19, and Littlewood reported her concerns that she might unknowingly transmit COVID-19 to patients or their doctors. Gatrell responded that "the issue is above my paygrade," and so Littlewood emailed Novartis human resources. Human resources did not respond to Littlewood's reported patient safety concerns, but approximately one week later Novartis pulled its sales representatives from the field.

14. From in or about April through May 2020, Novartis's sales representatives conducted their work using videoconferencing and other remote tools. By May 2020 sales representatives were encouraged to resume working in the field. By June 2020, Novartis required its sales representatives to return to the field. By October 2020, President of Novartis U.S. Pharmaceuticals, Victor Bulto required all employees to be customer-facing in the field five days a week at "pre-COVID" activity levels. Tim Vannaman echoed these requirements.

15. Novartis referred to sales representatives as "essential workers" at this juncture, and Vannaman referred to the country as being in a "post-COVID" era. Novartis also sent sales representatives emails identifying geographical areas according to restrictiveness or openness as opposed to positivity rates.

16. In or around early November 2020, Littlewood spoke with a colleague who worked for another pharmaceutical company about what precautions that company was taking. The friend stated that the company was sending their sales representatives weekly messages identifying which areas they could perform in-person visits according to positivity rates.

17. Littlewood then wrote a letter to Novartis's human resources staff, informing it of the patient and employee safety precautions other pharmaceutical companies were taking. She implored Novartis to employ the same patient and employee safety precautions. At the time she raised this patient and employee safety complaint, Littlewood was expected to travel to Wyoming, which had a 40% COVID-19 positivity rate. However, Novartis refused to implement any safety protocols.

18. In or around November 2020, Littlewood had an in-person meeting with a cardiac catheterization lab at Health One Hospital in Denver, Colorado. Two of the nurses present at the lunch meeting stated that they currently were positive with COVID-19. The woman who organized this meeting confirmed the nurses' positive COVID-19 status. Littlewood called Gatrell after the meeting, and Gatrell told Littlewood to call a Novartis hotline to report her patient and employee safety concerns.

19. Littlewood called the Novartis hotline and spoke to a nurse who told her that Littlewood did not need to self-isolate because she was not experiencing symptoms, despite

the exposure occurring just hours before this call. Littlewood informed Gatrell that although the Novartis hotline stated she did not need to self-isolate she would feel safer doing so. Approximately a week later, a nurse at the Novartis hotline called Littlewood and told her she should self-isolate for two weeks.

20. Littlewood set up an in-person meeting for her counterpart, Josh Zuieback, and a regional account manager, Wes Sibole, on November 19, 2020, to visit a Novartis customer while she was self-isolating. The customer had strict COVID-19 protocols, requiring only one industry representative at in-person visits, but the customer agreed to have Zuieback and Sibole present for the meeting. Zuieback learned before the meeting was about to begin that Sibole brought an account manager, John Roberts, along as well. Zuieback called Littlewood to update her and to see if the additional person was permitted under the customer's COVID-19 protocols, which Littlewood stated it was not.

21. After the meeting the customer representative who organized the meeting called Littlewood and expressed that she was unhappy with Novartis' overt violation of the customer's COVID-19 protocols. Sibole then called Littlewood after the meeting to debrief, and Littlewood informed him that the customer reported Novartis's violations of the client's COVID-19 safety protocols. Sibole became angry with Littlewood during the call when she reported this, and he told Zuieback he was sorry if he got Zuieback "in trouble" along with Littlewood.

22. On or about December 10, 2020, just a few weeks after the November 19 incident, Gatrell abruptly terminated Littlewood for alleged poor performance, which was a pretextual reason as Littlewood was a high performer. That same day, Gatrell terminated Zuieback as well. Gatrell cited alleged poor performance for Zuieback as well.

23. In the trimester prior to Littlewood's illegal termination, Novartis rated Littlewood as its second-highest seller in the nation out of hundreds of salespeople. In the same trimester, Zuieback was rated Novartis's fifth-highest seller in the nation out of hundreds of salespeople.

24. On or about September 24, 2020, Littlewood had the highest goal attainment when compared with other salespeople in the region.

25. In or about August 2020, Gatrell sent an email to his sales district highlighting Littlewood's performance by stating "Lauri is on fire at +31.2%," referring to Littlewood's high performing sales territory.

26. Littlewood was not rated below a 1 for two consecutive periods and was never issued a performance improvement plan. Both Zuieback and Littlewood did not receive a performance evaluation for 2020.

27. Littlewood and Zuieback were counterparts, meaning they held the same job title, serviced the same territory, sold the same drug, and had the same sales goals. Their positions were "mirror" images of one another.

28. After Novartis terminated Littlewood, she learned that she was paid approximately $20,000 less than Zuieback for performing the exact same job. Littlewood held a higher rank than Zuieback for sales and had been employed at Novartis for approximately one year longer than Zuieback.

29. Littlewood sustained economic damages due to Novartis willfully violating the EPA by paying Littlewood less than her male counterpart for doing the same job.

**COUNT I**
**Discrimination in Violation of the**
**Equal Pay Act of 1963,**
**29 U.S.C. § 206(d)**

30. Littlewood incorporates the allegations in the foregoing paragraphs as though alleged herein.

31. At all relevant times herein, 29 U.S.C. § 206(d) was in full force and effect.

32. Littlewood is an "employee" as the term is defined at 29 U.S.C. § 203.

33. Novartis is an "employer" as the term is defined at 29 U.S.C. § 203.

34. Novartis willfully violated the EPA by paying Littlewood less than her male counterpart for doing the same job.

35. Littlewood has suffered damages as a result of Novartis' unlawful actions.

36. For Novartis's willful violations of the EPA, Littlewood is entitled to such legal or equitable relief as will effectuate the purposes of the EPA, including but not limited to back pay, liquidated damages, reasonable attorney's fees, interest on all damages, and any other relief that this Court deems just and equitable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Lauri Littlewood respectfully requests that the Court enter judgment in her favor and award to her the following relief.

A.  Judgment against the Defendant Novartis in the amount of economic damages (back pay) and liquidated damages;

B.  Pre-judgment interest;

C.  Interest due on unpaid wages;

D.  Reasonable attorney's fees and costs, and

E.  Any other relief this Honorable Court deems just and proper to award.

## JURY DEMAND

Plaintiff demands a jury for all issues to be so tried.

Respectfully submitted,


/s/ R. Scott Oswald
R. Scott Oswald
John T. Harrington, (*admission pending*)
The Employment Law Group, P.C.
1717 K St., NW, Ste. 1110
Washington, D.C. 20006-5345
(202) 261-2830
(202) 261-2835 (facsimile)
soswald@employmentlawgroup.com
tharrington@employmentlawgroup.com
*Counsel for Plaintiff Lauri Littlewood*

Plaintiff Lauri Littlewood
4452 Terry Lake Rd
Fort Collins, CO 80524

8