**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 21-cv-02559-CMA-SKC

LAURI LITTLEWOOD,

     Plaintiff,

v.

NOVARTIS PHARMACEUTICALS CORP.,

     Defendant.

---

**ORDER GRANTING DEFENDANT'S PARTIAL MOTION TO DISMISS**

---

This matter is before the Court on Defendant Novartis Pharmaceuticals Corp.'s ("Novartis") partial Motion to Dismiss. (Doc. # 34.) Specifically, Novartis requests dismissal of Plaintiff's first, second, fourth, and fifth claims for relief. (*Id.* at 1.) For the following reasons, the Motion is granted.

## I.    <u>BACKGROUND</u>

This is an employment discrimination case brought by Plaintiff Lauri Littlewood against her former employer, Novartis. Ms. Littlewood is a female who was 54 years old at the time of her termination and had 25 years of experience in pharmaceutical sales. (Doc. # 32 at ¶ 7.) Ms. Littlewood began working for Novartis in April 2015. (*Id.* at ¶ 8.) She served as an executive cardiovascular sales representative selling a particular heart medication in her territory, which included Wyoming, Nebraska, and Colorado. (*Id.* at ¶¶ 8–9.) During her employment with Novartis, Ms. Littlewood earned

consistently satisfactory employee evaluations and was never issued a performance improvement plan. (*Id*. at ¶¶ 12–13, 28.) In the trimester leading up to her termination, Ms. Littlewood was frequently commended for her high selling performance. (*Id*. at ¶¶ 25–27.)

In March 2020, Ms. Littlewood contacted her direct supervisor, John Gatrell, to express her concerns about continuing to work in the field considering the unfolding COVID-19 ("COVID") pandemic. (*Id*. at ¶ 15.) Following the conversation, Ms. Littlewood sent an email to Novartis's human resources department to further express her concerns. (*Id.*) Although Ms. Littlewood never received a response, Novartis removed its sales representatives from the field a week later. (*Id.*) Novartis sales representatives worked remotely until at least June 2020, when they were required to return to the field. (*Id*. at ¶ 16.) Between June and September 2020, Angella King, Novartis's regional manager, advised Ms. Littlewood's coworker, Samantha Parisi, "that Parisi and Littlewood needed to promote themselves as '[Tim Vannaman, regional manager] was not inclined to promote women.'" (*Id*. at ¶ 11.) In October 2020, Mr. Gatrell contacted Mr. Vannaman to discuss Ms. Littlewood. (*Id*. at ¶ 34.) By October 2020, Novartis required all employees to resume activity at pre-COVID levels. (*Id*. at ¶ 16.) In November 2020, after comparing Novartis's COVID precautions with those of other pharmaceutical companies, Ms. Littlewood wrote a letter to Novartis's human resources staff imploring Novartis to take stronger precautions. (*Id*. at ¶¶ 18–19.) The letter had no effect on Novartis's COVID approach. (*Id*. at ¶ 19.)

In November 2020, during an in-person sales meeting at a hospital lab, Ms. Littlewood had close contact with hospital employees who had tested positive for COVID, and, as a result, Ms. Littlewood self-isolated. (*Id.* at ¶¶ 20–21.) During her isolation, on November 19, 2020, Ms. Littlewood facilitated a meeting between one of Novartis's clients and her counterpart, Josh Zuieback, as well as a Novartis regional account manager, Wes Sibole. (*Id.* at ¶ 22.) The client had COVID protocols in place that permitted only one industry representative at in-person meetings, however, the client made an exception and permitted both Mr. Zuieback and Mr. Sibole to attend. (*Id.*) Shortly before the beginning of the meeting, Mr. Zuieback learned that an additional Novartis employee, John Roberts, also planned to attend. (*Id.*) Mr. Zuieback phoned Ms. Littlewood upon learning that Mr. Roberts planned to attend to ask if a third person would be permitted at the meeting, to which Ms. Littlewood responded that an additional attendee would violate the client's COVID protocols. (*Id.*) Following the meeting, the client called Ms. Littlewood expressing their disappointment with Novartis's violation of the client's COVID protocol. (*Id.* at ¶ 23.) Mr. Sibole also called Ms. Littlewood after the meeting, at which time, Ms. Littlewood informed him of the client's complaint. (*Id.*) Ms. Littlewood alleges that "Sibole became angry with Littlewood during the call when she reported [the complaint], and he told Zuieback he was sorry if he got Zuieback 'in trouble' along with Littlewood." (*Id.*)

On or about December 10, 2020, Ms. Littlewood was terminated by Mr. Gatrell for alleged poor performance. (*Id.* at ¶ 24.) Mr. Zuieback was also terminated on the same day, for the same reason. (*Id.*) Mr. Zuieback and Ms. Littlewood "held the same

job title, serviced the same territory, sold the same drug, and had the same sales goals." (*Id.* at ¶ 29.) Ms. Littlewood learned after her termination that she had been paid approximately $20,000 less than Mr. Zuieback for performing the same job. (*Id.* at ¶ 30.) In addition, Ms. Parisi, an institutional sales specialist "in her thirties," was not terminated. (*Id.* at ¶ 31.) Ms. Littlewood filed a claim of discrimination with the Equal Employment Opportunity Commission ("EEOC") and received a Notice of Right to Sue from the EEOC. (*Id.* at ¶ 78.)

Ms. Littlewood initiated this action on September 21, 2021. (Doc. # 1.) She asserts five claims for relief for discrimination pursuant to: (1) the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*; (2) Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*; (3) the Equal Pay Act of 1963 ("Equal Pay Act"), 29 U.S.C. § 206(d); (4) the Colorado Public Health Emergency Whistleblower Law ("CPHEW"), Colo. Rev. Stat. § 8-14.4-102(1); and (5) the Colorado Anti-Discrimination Act ("CADA"), Colo. Rev. Stat. § 24-34-402. (Doc. # 32 at 1.)

Novartis filed its first partial motion to dismiss on December 28, 2021. (Doc. # 17.) Therein, Novartis moved to dismiss Plaintiff's Title VII claim and state law claims under CADA and CPHEW. Ms. Littlewood timely filed a response (Doc. # 27) and a motion for leave to amend her complaint (Doc. # 26), which the Court granted (Doc. # 31). Accordingly, Ms. Littlewood filed her Second Amended Complaint on February 1, 2022. (Doc. # 32.)

On February 15, 2022, Novartis filed the instant Motion to Dismiss Ms. Littlewood's Title VII, ADEA, and state law claims pursuant to Fed. R. Civ. P. 12(b)(1)

and 12(b)(6). (Doc. # 34.) Ms. Littlewood filed a Response (Doc. # 35), and Novartis followed with its Reply (Doc. # 36).

## II. <u>LEGAL STANDARDS</u>

### A. RULE 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679–81. Second, the Court considers the factual allegations "to determine if they

plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 679.

However, the court need not accept conclusory allegations without supporting factual averments. *S. Disposal, Inc. v. Tex. Waste Mgmt.*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (citation omitted). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (citations and quotations omitted).

## B.     RULE 12(b)(1)

Dismissal pursuant to Fed. R. Civ. P. 12(b)(1) is appropriate if the Court lacks subject matter jurisdiction over the claims for relief asserted in the complaint. "The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction." *Port City Props. v. Union Pac. R.R. Co.*, 518 F.3d 1186, 1189 (10th Cir. 2008). Generally, a Rule 12(b)(1) motion may take two forms: a facial attack or a factual attack on the complaint. *Holt v. United States*, 46 F.3d 1000, 1002–03 (10th Cir. 1995). A facial attack looks only to the factual allegations of the complaint in challenging the court's jurisdiction. *Id.* at 1002. By contrast, a factual attack "may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends." *Id.* at 1003; *see also New Mexicans for Bill Richardson v.*

6

*Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995) ("A Rule 12(b)(1) motion can challenge the substance of a complaint's jurisdictional allegations in spite of its formal sufficiency by relying on affidavits or any other evidence properly before the court."). In reviewing a factual attack, as in the instant case, the Court has "wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule (12)(b)(1)." *Holt*, 46 F.3d at 1003.

### III.    DISCUSSION

Novartis first argues that Ms. Littlewood's ADEA and Title VII claims should be dismissed for failure to state a claim for which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. # 34 at 4–9.) Next, Novartis contends that Ms. Littlewood's CADA claim should be dismissed because Ms. Littlewood has not yet exhausted her administrative remedies pursuant to Colo. Rev. Stat. § 24-34-306(14). (*Id.* at 9–11.) Finally, Novartis asserts that the Court should decline to exercise supplemental jurisdiction over Ms. Littlewood's CPHEW claim because the claim does not share a common nucleus of operative fact with Ms. Littlewood's federal claims and the CPHEW claim raises a novel issue of state law. (*Id.* at 11–15.) The Court addresses each argument in turn.

### A.    ADEA CLAIM

Novartis argues that Ms. Littlewood has failed to allege facts demonstrating that her termination was because of her age or that her position was filled by a younger person. (Doc. # 34 at 7–8.) As such, Novartis argues that pursuant to Fed. R. Civ. P.

12(b)(6), Ms. Littlewood's ADEA claim should be dismissed. The Court agrees with Novartis.

The ADEA makes it unlawful for any employer to fire or otherwise discriminate against an individual because of that individual's age. 29 U.S.C. § 623(a)(1). To establish a disparate-treatment claim under the ADEA, "a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009). Although Ms. Littlewood need not allege that her age was the sole motivating factor for her termination, she must allege that "age was the factor that made a difference." *Jones v. Okla. City Pub. Schs.*, 617 F.3d 1273, 1277–78 (10th Cir. 2010).

In cases where, as here, a plaintiff does not have direct evidence of age discrimination, she may use the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Greene*, 411 U.S. 792, 802–04 (1973). *See Jones*, 617 F.3d at 1278 (determining *McDonnell Douglas* framework is appropriate for ADEA claims); *see also Rivera v. City & Cnty. of Denver*, 365 F.3d 912, 920 (10th Cir. 2004) (applying the framework to an ADEA termination claim). Under that analysis, Ms. Littlewood bears the initial burden of setting forth a prima facie case of discrimination. In termination cases, the elements of a prima facie age discrimination case are typically that the plaintiff was: (1) within the protected class of individuals 40 or older; (2) doing satisfactory work; (3) terminated from employment; and (4) replaced by a younger person. *Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038, 1056 (10th Cir. 2020). If a plaintiff establishes a prima facie case, the burden shifts to the employer "to

articulate some legitimate, nondiscriminatory reason" for its action. *McDonnell Douglas*, 411 U.S. at 802. Once the employer meets its burden, the plaintiff must then establish that the employer's proffered reasons were only pretext for discrimination. *Jones*, 617 F.3d at 1278.

The prima facie case under *McDonnell Douglas* is an evidentiary standard and not a pleading requirement. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002) (noting that a prima facie case can vary depending on context and can be difficult to define at the pleading stage). For purposes of reviewing a 12(b)(6) motion, "the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012). Although Ms. Littlewood is not required to establish a prima facie case of age discrimination in the complaint, "she is required to set forth plausible claims" and cannot merely rely on "the type of conclusory and formulaic recitations disregarded by the Court in *Iqbal*." *Id.* at 1193. While specific facts are not necessary, "some facts are." *Id.*

Novartis does not appear to contest that Ms. Littlewood adequately alleges facts to demonstrate the first three elements of a prima facie ADEA claim: She alleges that she was 54 years old, she routinely performed satisfactorily on her performance evaluations, and she was "abruptly terminated" on December 10, 2020. (Doc. # 32 at ¶¶ 7, 24.) However, the Court agrees with Novartis that Ms. Littlewood fails to allege facts showing that "her position was filled by a younger person." *Rivera*, 365 F.3d at 920. Ms. Littlewood alleges that, after her termination, Novartis continued to employ an

"institutional sales specialist," Ms. Parisi, who "is in her thirties" and "held similar job responsibilities." (Doc. # 32 at ¶ 31.) However, Ms. Littlewood does not allege that Ms. Parisi (or any other person) filled her vacated "executive cardiovascular sales representative" role. (*Id*.) As such, Ms. Littlewood does not plausibly allege the fourth element of a prima facie case of age discrimination.

Further, the allegations relating to Ms. Parisi do not permit the Court to infer that Ms. Littlewood's termination was on account of her age because the Second Amended Complaint does not adequately allege that Ms. Littlewood and Ms. Parisi are similarly situated. "Individuals are considered 'similarly-situated' when they deal with the same supervisor, are subjected to the same standards governing performance evaluation and discipline, and have engaged in conduct of 'comparable seriousness.'" *EEOC v. PVNF, L.L.C.*, 487 F.3d 790, 801 (10th Cir. 2007). Although Ms. Littlewood alleges that she and Ms. Parisi held "similar job responsibilities," Ms. Littlewood provides no factual allegations describing those job responsibilities. *See Bekkem v. Wilkie*, 915 F.3d 1258, 1275 (10th Cir. 2019) ("A plaintiff's assertion that she is 'similarly situated' to other employees is 'just a legal conclusion—and a legal conclusion is never enough." (quoting *Hwang v. Kan. State Univ.*, 753 F.3d 1159, 1164 (10th Cir. 2014)). Indeed, Ms. Littlewood contrarily alleges that she and Ms. Parisi had different jobs: Ms. Littlewood as an "**executive** cardiovascular sales representative" and Ms. Parisi as an "institutional sales specialist." (Doc. # 32 at ¶¶ 9, 31) (emphasis added); *see Miller v. Auto. Club of N.M., Inc.*, 420 F.3d 1098, 1115 (10th Cir. 2005) (finding that two employees were not similarly situated "because they held two different positions"). In

the absence of any nonconclusory allegations relating to Ms. Littlewood's and Ms. Parisi's positions, the Court cannot determine that the two employees are "similarly situated" or infer that Ms. Littlewood's termination was related to her age. *Cf. Ibrahim v. All. for Sustainable Energy, LLC*, 994 F.3d 1193, 1198 (10th Cir. 2021) (noting that a factfinder could consider job responsibilities and qualifications in determining whether employees are similarly situated despite different job titles).

Last, Ms. Littlewood alleges that she learned in September 2020 that Novartis planned to implement a new mentoring program "where Novartis intended to hire and mentor new college graduates to start working with cardiology drugs." (Doc. # 32 at ¶ 32.) This vague allegation simply does not support a claim for age discrimination. *See Johnston v. Hunter Douglas Window Fashions, Inc.*, 715 F. App'x 827, 829 (10th Cir. 2017) (affirming district court order dismissing discrimination claims as implausible because plaintiff made vague and facially meaningless allegations (citations and quotations omitted)).

Because the Second Amended Complaint is devoid of any factual allegations linking Ms. Littlewood's age with her termination, the Court finds that Ms. Littlewood has failed to plausibly allege a claim of age discrimination. "'While we do not mandate the pleading of any specific facts in particular,' a plaintiff must include enough context and detail to link the allegedly adverse employment action to a discriminatory or retaliatory motive with something besides 'sheer speculation.'" *Bekkem*, 915 F.3d at 1274–75. The sole allegation linking Ms. Littlewood's termination with her age— "Novartis violated the ADEA by terminating Littlewood on account of her age" (Doc. #

32 at ¶ 41)—is conclusory and thus not entitled to the presumption of truth. *Khalik*, 671 F.3d at 1193. Accordingly, the Court finds that the Second Amended Complaint fails to state an age discrimination claim upon which relief can be granted and therefore grants Novartis's Motion to Dismiss with respect to Ms. Littlewood's ADEA claim.

In her Response, Ms. Littlewood states that, if the Court dismisses her ADEA claim, she requests leave to further amend her complaint to include the factual allegations that "[a]fter Littlewood was terminated, Parisi, who sold the same heart medication as Littlewood and who reported to the same supervisor as Littlewood, was given some of Littlewood's job responsibilities at Novartis" and "Zuieback, Littlewood's counterpart, is forty-seven years of age." (Doc. # 35 at 9.) As an initial matter, the Court is disinclined to permit Ms. Littlewood leave for further amendment because she has twice amended her complaint, and each time she has failed to include these allegations. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (listing "repeated failure to cure deficiencies by amendments previously allowed" as a reason to deny leave to amend). However, the Court notes that Novartis did not challenge Ms. Littlewood's ADEA claim in its prior Motion to Dismiss, and Ms. Littlewood was therefore not on notice of pleading deficiencies relating to her ADEA claim in the same manner by which she was on notice of deficiencies concerning her other claims. *See generally* (Doc. # 17.) Although the Court is skeptical whether the proposed amendment would "nudge [Ms. Littlewood's] claims across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570, the Court finds that the interests of justice weigh in favor of

permitting Ms. Littlewood leave to amend, *see* Fed. R. Civ. P. 15(a)(2). Accordingly, the Court dismisses Ms. Littlewood's ADEA claim without prejudice.

## B.    TITLE VII CLAIM

Novartis next moves to dismiss Ms. Littlewood's Title VII claim pursuant to Fed. R. Civ. P. 12(b)(6) on the grounds that Ms. Littlewood has failed to allege facts showing that she was terminated because of her sex. (Doc. # 34 at 5.) The Court again agrees with Novartis.

Title VII makes it unlawful for an employer to discriminate against or terminate an employee because of the employee's sex. 42 U.S.C. § 2000e-2(a)(1). At the motion to dismiss phase, a plaintiff is not required to establish a prima facie case to prove her claim for disparate treatment under Title VII. *Frappied*, 966 F.3d at 1050. Rather, the Court considers whether the plaintiff has set forth a plausible claim in light of the elements of her claim. *Id.* A plaintiff proves a violation of Title VII by direct evidence of discrimination or by following the *McDonnell Douglas* burden-shifting framework. 411 U.S. at 802–04; *see Bennett v. Windstream Commc'ns, Inc.*, 792 F.3d 1261, 1266 (10th Cir. 2015). To establish a prima facie case of employment discrimination, Ms. Littlewood must show that: (1) she is a member of a protected class, (2) she suffered an adverse employment action, (3) she was qualified for the position at issue, and (4) she was treated less favorably than others not in the protected class. *See Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 531 (10th Cir. 1998). "The critical prima facie inquiry in all cases is whether the plaintiff has demonstrated that the adverse employment action occurred under circumstances which give rise to an inference of unlawful

discrimination." *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1227 (10th Cir. 2000).

The Court summarizes the relevant factual allegations in the Second Amended Complaint as follows: Between June and September 2020, Angella King, Novartis's regional manager, advised Ms. Parisi "that Parisi and Littlewood needed to promote themselves as '[Tim Vannaman, regional manager] was not inclined to promote women.'" (Doc. # 32 at ¶ 11.) Ms. Littlewood's direct supervisor was John Gatrell. (*Id.* at ¶ 15.) In October 2020, Mr. Gatrell contacted Mr. Vannaman to discuss Ms. Littlewood. (*Id.* at ¶ 34.) On November 19, 2020, Ms. Littlewood facilitated a client meeting that Mr. Zuieback, regional account manager Wes Sibole, and one other employee attended, after Ms. Littlewood expressly told Mr. Zuieback that a third person was not permitted to attend pursuant to the customer's COVID protocol. (*Id.* at ¶ 22.) Afterwards, Ms. Littlewood called Mr. Sibole to inform him that the client was unhappy about the violation of the client's COVID protocol. (*Id.* at ¶¶ 22–23.) "Sibole became angry with Littlewood during the call when she reported this, and he told Zuieback he was sorry if he got Zuieback 'in trouble' along with Littlewood." (*Id.* at ¶ 23.) A few weeks later, on December 10, 2020, Mr. Gatrell terminated both Ms. Littlewood and Mr. Zuieback for poor performance. (*Id.* at ¶¶ 24–25.) Ms. Parisi was not terminated. (*Id.* at ¶ 31.)

Reviewing the facts in the light most favorable to Ms. Littlewood and drawing all inferences in her favor, the Court finds that Ms. Littlewood has not plausibly alleged that her termination was the result of her being "treated less favorably" on account of

14

her sex. *Sanchez*, 164 F.3d at 531. Significantly, Ms. Littlewood alleges that her counterpart, Mr. Zuieback, was terminated by Novartis on the same day, and that Ms. Parisi, a Novartis employee with "similar" job responsibilities, remained employed. (Doc. # 32 at ¶¶ 24, 31.) Ms. Littlewood's allegations that (1) a nonprotected male employee was treated identically, and (2) a protected female employee was treated more favorably do not allow "the court to draw the reasonable inference" that Ms. Littlewood was treated less favorably than others not in the protected class. *Iqbal*, 556 U.S. at 678; *see also Lee v. U.S. Postal Serv.*, 12 F. App'x 322, 323 (6th Cir. 2001) (holding that a plaintiff failed to establish a prime facie case of discrimination where the "similarly situated employee who was not a member of a protected group" was "in fact, treated exactly the same as [plaintiff]").

Further, Ms. Littlewood has not plausibly alleged a connection between her termination and the allegation that she was treated differently than her male counterpart, Mr. Zuieback, during a telephone call. Ms. Littlewood alleges that Mr. "Sibole became angry with Littlewood during the call when she reported [the complaint], and he told Zuieback he was sorry if he got Zuieback 'in trouble' along with Littlewood." (Doc. # 32 at ¶ 23.) However, the fact that Mr. Zuieback, who also was "in trouble," received an apology and yet also later got fired, does not permit the inference that Ms. Littlewood was terminated "under circumstances that give rise to an inference of unlawful discrimination." *Kendrick*, 220 F.3d at 1227. Instead, these allegations imply that both Mr. Zuieback and Ms. Littlewood were fired due to the incident with the client. Further, there is no allegation that Mr. Sibole was involved in the decision to terminate

Ms. Littlewood and Mr. Zuieback. Similarly, the allegations relating to Mr. Vannaman are too attenuated. Ms. Littlewood has not alleged any facts that allow the Court to infer that her termination by Mr. Gatrell is in any way related to Mr. Vannaman's alleged discriminatory promoting practices. Further, the alleged October 2020 conversation between Mr. Gatrell and Mr. Vannaman occurred seven months after Ms. Littlewood's first complaint about Novartis's COVID protocols and prior to the November client incident. It cannot be inferred from this timeline that the conversation between Mr. Vannaman and Mr. Gatrell played any role in Ms. Littlewood's termination. For these reasons, the Second Amended Complaint fails to state a claim for relief under Title VII and the Motion to Dismiss is granted with respect to claim two.

In her Response, Ms. Littlewood again requests leave to amend her complaint to add an allegation regarding her removal from an "employee morale" taskforce in 2018 by Mr. Vannaman. (Doc. # 32 at ¶ 10.) Specifically, she seeks to add that "[t]he other employees who remained on the task force . . . included one male and two females, of whom two were less than fifty years of age." (Doc. # 35 at 7.) The Court does not find it appropriate to grant Plaintiff leave to amend her Title VII claim. *See* Fed. R. Civ. P. 15(a)(2). Again, the Court notes that Ms. Littlewood has twice amended her complaint, and each time she failed to include these allegations despite being on notice that Novartis challenged the sufficiency of her pleadings for her Title VII claim. *See Foman*, 371 U.S. at 182 (listing "repeated failure to cure deficiencies by amendments previously allowed" as a reason to deny leave to amend). Further, amendment would be futile because these facts are still insufficient to demonstrate that

Ms. Littlewood's termination "occurred under circumstances which give rise to an inference of unlawful discrimination." *Kendrick*, 220 F.3d at 1227; *see Foman*, 371 U.S. at 182 (listing "futility of amendment" as reason to deny leave to amend). Allegations relating to an unrelated event that occurred several years prior to Ms. Littlewood's termination, in which she alleges that other women were not treated unfavorably, do not appear to have any connection with Ms. Littlewood's termination. Accordingly, the Court finds that amendment to include the proposed allegation would be futile and denies Ms. Littlewood's request for leave to amend with respect to her Title VII claim. Ms. Littlewood's Title VII claim is therefore dismissed with prejudice. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) ("A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile.").

## C.    CADA CLAIM

Novartis next moves to dismiss Ms. Littlewood's CADA claim on the grounds that Ms. Littlewood failed to exhaust her administrative remedies as required by Colo. Rev. Stat. § 24-34-306. (Doc. # 34 at 9.) Specifically, Novartis argues that Ms. Littlewood has not demonstrated that she received a notice of right to sue from the Colorado Civil Rights Division ("CCRD"). (*Id.* at 9–11.) Exhaustion is a jurisdictional prerequisite under Colorado law, so whether Ms. Littlewood exhausted the administrative remedies available to her implicates this Court's subject matter jurisdiction. *See City of Colo. Springs v. Conners*, 993 P.2d 1167, 1169 n.3 (Colo. 2000) ("As a condition precedent to bringing an action in district court, a party must

exhaust her administrative remedies available under [CADA], and a right-to-sue letter will often serve as evidence that a party complied with this requirement."); *see also Clayton v. Dreamstyle Remodeling of Colo., LLC*, No. 20-cv-02096-KMT, 2021 WL 4078911, at *5 (D. Colo. Sept. 7, 2021) (finding that the district court did not have subject matter jurisdiction over an unexhausted CADA claim). A court lacking jurisdiction "must dismiss the case at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

Ms. Littlewood alleges that she "exhausted her administrative remedies regarding her claims under CADA." (Doc. # 32 at ¶ 78.) However, Ms. Littlewood has not alleged or provided proof that she received a notice of right to sue from the CCRD. Instead, Ms. Littlewood argues that she nevertheless has exhausted her administrative remedies under CADA because the EEOC and CCRD have a work-sharing agreement and she received a notice of right to sue from the EEOC. (*Id.*) This Court agrees with other courts in this district that have addressed this issue and concluded that a notice of right to sue from the EEOC is not sufficient to demonstrate exhaustion of administrative remedies for purposes of a CADA claim. *See Jackson v. City & Cnty. of Denver*, No. 11-cv-02293-PAB-KLM, 2012 WL 4355556, at *2 n.1 (D. Colo. Sept. 24, 2012) (finding that "an EEOC right-to-sue letter does not strip the CCRD of jurisdiction over CADA claims"). Without a notice of right to sue from the CCRD, the Court finds that Ms. Littlewood has not demonstrated that she has fully exhausted her administrative remedies under CADA. This Court therefore lacks subject matter

jurisdiction over Ms. Littlewood's CADA claim, and as a result, the Court grants

Novartis's Motion with respect to Ms. Littlewood's CADA claim and dismisses the claim

without prejudice. *Brereton*, 434 F.3d at 1219 (holding that a district court's dismissal

for lack of subject matter jurisdiction should be without prejudice).

### D.   CPHEW CLAIM

Finally, Novartis argues that it would be inappropriate for this Court to exercise

supplemental jurisdiction over Ms. Littlewood's CPHEW claim because (1) the CPHEW

claim and Ms. Littlewood's federal claims do not share a common nucleus of operative

fact; and (2) the CPHEW claim raises a novel issue of state law. (Doc. # 34 at 11–15.)

"[I]n any civil action of which the district courts have original jurisdiction, the

district courts shall have supplemental jurisdiction over all other claims that are so

related to claims in the action within such original jurisdiction that they form part of the

same case or controversy . . . ." 28 U.S.C. § 1367(a). However, district courts "may

decline" to hear a claim if "the claim raises a novel . . . issue of State law." 28 U.S.C. §

1367(c)(1). A claim is part of the same "case or controversy" if it derives from a

common nucleus of operative fact. *United Mine Workers of Am. v. Gibbs*, 383 U.S.

715, 725 (1966). Supplemental jurisdiction need not be exercised in every case in

which a common nucleus of operative fact is found to exist. *Id.* at 726.

Ms. Littlewood's CPHEW claim relates to alleged unlawful termination resulting

from Ms. Littlewood raising concerns about Novartis's response to the COVID

pandemic. (Doc. # 32 at ¶ 67.) The Colorado General Assembly enacted CPHEW on

July 11, 2020, to address employee rights in the workplace for employee conduct

related to an employer's actions during a public health emergency. *See* H.B. 20-1415, 72nd Gen. Assemb., 2d Reg. Sess. (Colo. 2020). Because the Colorado Supreme Court has not yet interpreted CPHEW and there are no other relevant authoritative decisions, the CPHEW claim raises a novel issue of state law. *See Merrifield v. Bd. of Cnty. Comm'rs for Cnty. of Santa Fe*, 654 F.3d 1073, 1085–86 (10th Cir. 2011) (finding where there was no controlling precedent on an issue of state law, "the interest in comity—leaving the states to decide novel questions of state law—predominates"). The novelty of CPHEW supports this Court finding that it should decline to exercise supplemental jurisdiction over Ms. Littlewood's CPHEW claim. *See Roe v. Cheyenne Mt. Conf. Resort, Inc.*, 124 F.3d 1221, 1237 (10th Cir. 1997) ("[I]n such circumstances, an authoritative state court ruling on the [novel state law] claim should be permitted, instead of a guess or uncertain prediction by a federal court.").

Additionally, this Court finds that exercising supplemental jurisdiction would be improper because Ms. Littlewood's remaining equal pay claim does not share a "common nucleus of operative fact" with her CPHEW claim. *Gibbs*, 383 U.S. at 725. Because this Court has determined that Ms. Littlewood's ADEA and Title VII claims must be dismissed for failure to state a claim, the only operative facts left for this Court to consider are those related to Ms. Littlewood's remaining federal claim alleging violation of the Equal Pay Act. (Doc. # 32 at ¶¶ 56–62.) For that claim, Ms. Littlewood alleges that Novartis violated the Equal Pay Act by paying Ms. Littlewood less than her male counterpart for doing the same job. (*Id.* at ¶ 60.) The Colorado state claim that Ms. Littlewood requests this court to exercise supplemental jurisdiction over is a claim

alleging retaliation under CPHEW relating to Ms. Littlewood's termination. (*Id.* at ¶¶ 63–70.) These two claims do not share a "common nucleus of operative fact" because the facts pertinent to the Equal Pay Act claim are those related to discriminatory pay practices *during* Ms. Littlewood's employment (*id.* at ¶¶ 29–30), whereas the facts pertinent to Ms. Littlewood's CPHEW claim are those related to alleged retaliation resulting in Ms. Littlewood's *termination* (*id.* at ¶¶ 13–28). These sets of facts do not intertwine and have no mutual bearing on the result of either claim.

Because there is no common nucleus of operative fact between Ms. Littlewood's Equal Pay Act claim and her CPHEW claim, and because the CPHEW claim raises a novel issue of state law, the Court declines in its discretion to exercise supplemental jurisdiction over the CPHEW claim and dismisses it without prejudice. *Gibbs*, 383 U.S. at 725 (holding that supplemental jurisdiction "is not a matter of the litigants' right, but of judicial discretion"); *see also VR Acquisitions, LLC v. Wasatch City*, 853 F.3d 1142, 1149 (10th Cir. 2017) (holding that state claims are properly dismissed without prejudice when a district court declines to exercise supplemental jurisdiction).

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, the Court ORDERS as follows:

- Defendant's Partial Motion to Dismiss (Doc. # 34) is GRANTED.[1]

---

[1] For future filings, Defendant is cautioned to conform to the civil practice standards of this Court. *See* CMA Civ. Practice Standard 10.1(b) & (c)(2).

- Accordingly, Plaintiff's Second Claim for Relief is DISMISSED WITH PREJUDICE and Plaintiff's First, Fourth, and Fifth Claims for Relief are DISMISSED WITHOUT PREJUDICE.

- Plaintiff shall have thirty days from the date of this order to file a motion for leave to amend her complaint, together with a redlined copy of the Amended Complaint, otherwise her claims will be dismissed with prejudice.

DATED:  August 3, 2022

BY THE COURT:

CHRISTINE M. ARGUELLO
Senior United States District Judge