**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:21-cv-02559-CMA-SP

LAURI LITTLEWOOD,

        Plaintiff,

    v.

NOVARTIS PHARMACEUTICALS CORPORATION,

        Defendant.

---

**DEFENDANT NOVARTIS PHARMACEUTICALS CORPORATION'S**
**MOTION FOR SUMMARY JUDGMENT**

---

Defendant, Novartis Pharmaceuticals Corporation, ("Novartis" or "Defendant") by and through counsel, respectfully requests the Court to grant this Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56(c) and dismiss Lauri Littlewood's ("Plaintiff") sole claim in her Third Amended Civil Complaint for Equitable and Monetary Relief and Demand for Jury Trial ("Complaint"). As grounds therefore, Defendant states as follows:

**Conferral.** Pursuant to D.C. COLO. L Civ. R. 7.1(a), counsel for the Parties conferred. Plaintiff opposes the relief sought herein.

**I.    INTRODUCTION**

Plaintiff's sole claim alleges discrimination under the Equal Pay Act 29 U.S.C. § 206(d) (hereinafter "EPA"). Contrary to Plaintiff's allegations, Novartis paid Plaintiff and Mr. Zuieback, who Plaintiff alleges was paid more based on sex, based on numerous factors other than sex. Novartis considered Mr. Zuieback's superior education (Master

in Business Administration ("MBA") and experience (nearly two-decades of experience with high-level competitor Merck & Co., Inc.), as well as additional factors, other than sex (leadership roles with local organizations, consistent tenure with one employer, higher salary with Merck & Co., Inc.), to determine Mr. Zuieback's and Plaintiff's starting salary. Prior to Plaintiff's termination, Novartis conducted an internal review regarding salary amounts and, based on its review, increased Plaintiff's salary by 2%, effective July 20, 2020.  Mr. Zuieback did not receive a similar adjustment. Plaintiff's and Mr. Zuieback's compensation were consistent with evolving market norms relating to experience, education, and job performance levels, and are also consistent with the significantly different levels of education and experience between Plaintiff and Mr. Zuieback, as discussed above. Novartis simply did not pay Plaintiff differently because of her sex, and Defendant is entitled to summary judgment.

## II.    STATEMENT OF UNDISPUTED FACTS

1. Plaintiff's alleged discrimination claim under the EPA is that Mr. Zuieback was paid a higher salary than Plaintiff when he was hired. Exhibit 1, Plaintiff's Depo., 177:5-18.

2. Novartis utilizes an equal employment opportunity policy with regard to compensating its employees, and follows that policy to ensure equal treatment, regardless of sex, when compensating its employees. Exhibit 1, Plaintiff's Depo., Exhibit 22.

3. Novartis also utilizes external market data, including collecting peer surveys applicable to Novartis' industry and peer companies, to help determine compensation for its employees to ensure Novartis' employee compensation remains competitive in

the marketplace. Exhibit 2, DiCicco Corp. Depo, 22:13-23:25.

4. Novartis has over 100,000 employees worldwide, including sales representatives. Exhibit 1, Plaintiff's Depo., 88:5-7.

5. Plaintiff began her position as Executive Sales Specialist in the area of Cardiovascular Executive Sales, in the Fort Collins area on April 20, 2015, with a starting salary of $104,000.00 per year. Exhibit 2, DiCicco Corp. Depo, 38:1-20.

6. Plaintiff's job included meeting with physicians to promote the health benefits of Entresto©, a medication for heart failure patients. Exhibit 1, Plaintiff's Depo., 43: 22-25; 44:2-3.

7. Mr. Zuieback began his position as Executive Sales Specialist in the Cardiovascular Sales, Denver Region on March 16, 2016, with a starting salary of $132,000.00 per year, plus a $5,000.00 signing bonus.  This was a different role than the role held by Plaintiff, meaning they had different titles (CV I versus CV II), different sales targets, different sales maps and goals, including one focused more on primary care and the other focused more on cardiologists.  Exhibit 3, J. Zuieback Offer Letter; Exhibit 4, Gatrell Depo. 69:7-23.

8. At the time of his hire, Mr. Zuieback had 17 consecutive years of prior pharmaceutical sales experience with Merck & Co., Inc (hereinafter "Merck"). Exhibit 5, J. Zuieback Resume.

9. Mr. Zuieback also had both an MBA and a bachelor's degree. *Id.*

10. Novartis recruited and hired Mr. Zuieback due to his educational background (MBA)

and his lengthy tenure with a similarly sized, competitor pharmaceutical company (Merck).  Exhibit 6, B. Eastabrooks Decl. ¶ 10; Exhibit 7, J. Lawson Decl. ¶ 10.

11. Plaintiff had less experience than Mr. Zuieback both in quality and consistency. Plaintiff only had recent experience with smaller pharmaceutical companies and did not stay with any one company for more than a few years at a time.  Zuieback, on the other hand, had 17 years of consecutive experience working with a top competitor, Merck.  Novartis thus valued Zuieback's lengthy and consistent experience more. Exhibit 6, B. Eastabrooks Decl. ¶¶ 11-13; Exhibit 7, J. Lawson Decl. ¶¶ 11-13.

12. Plaintiff agrees that varying levels of experience, education, extracurricular involvement in marketing and volunteering, and possession of an advanced degree is appropriate to consider level of compensation for an employee. Exhibit 1, Plaintiff's Dep., 189:5-190:20.

13. Mr. Zuieback also had significant, local leadership involvement with community organizations that Novartis valued that Plaintiff did not have.  Exhibit 6, B. Eastabrooks Decl. 12; Exhibit 7, J. Lawson Decl. ¶ 12  Mr. Zuieback also had significant sales experience in the Colorado region which Plaintiff did not have.   Exhibit 6, B. Eastabrooks Decl. ¶¶ 11-13; Exhibit 7, J. Lawson Decl. ¶¶ 11-13.  Mr. Zuieback also had significant awards with Merck.  Exhibit 2 DiCicco Corp. Depo, 59:6-13.

14. Prior to his employment at Novartis, Mr. Zuieback was earning a base salary of $115,000, with an expected merit increase to $120,000. Exhibit 2, DiCicco Corp. Depo, 61:13-20.  Mr. Zuieback was also walking away from a bonus to join Novartis.

*Id*. at 62:7-12.Mr. Zuieback thus negotiated his initial offer and indicated he would decline if the offer was not raised. *Id*.  On the other hand, Plaintiff's base pay from her prior employer was lower, thus she was satisfied with her initial offer from Novartis, and did not attempt to negotiate.  *Id*. 50:10-13; Exhibit 7, J. Lawson Decl. ¶ 14 . Plaintiff received a more significant percentage increase in pay from her previous employer when she joined Novartis than did Mr. Zuieback when he joined Novartis. Indeed, Plaintiff went from $114,000 in pay (base salary and bonus potential) to $131,000 (base pay and bonus potential).  Mr. Zuieback on the other hand went from $151,000 (base pay and bonus potential) to $158,000 (base pay and bonus potential). All of the factors discussed above in the foregoing paragraphs resulted in Mr. Zuieback's pay as compared to Ms. Littlewood's pay.  Exhibit 6, B. Eastabrooks Decl. ¶ 14; Exhibit 7, J. Lawson Decl. ¶ 14.  This would have occurred regardless of sex. Exhibit 6, B. Eastabrooks Decl. ¶ 15; Exhibit 7, J. Lawson Decl. ¶ 15.

15. At the time that Plaintiff and Mr. Zuieback were employed by Novartis, the Company paid incentive compensation to its sales representatives based on their sales objectives which meant that 80% of a representative's earned incentives were paid based on the representative's sales performance, while 20% were paid based on Values and Behaviors ("V&B") ratings which are based upon how sales goals are achieved. Exhibit 8, Incentive Compensation Policy.

16. Sales performance incentives were paid by trimester, while V&B incentives were paid annually after an employee's year-end performance review and based on the

employee's V&B rating. *Id*.

17. Originally, Plaintiff's sales territory included Denver and Northern Colorado, including Boulder, Wyoming, and Eastern Montana. Exhibit 1, Plaintiff's Depo., 44:6-9. As her employment continued, her territory shrunk, with her last territory including Northern Colorado and most of Wyoming. *Id*. at 44:10-12.

18. Plaintiff had no knowledge of the market conditions Novartis faced with regard to hiring sales employees in 2015 when she was hired. *Id*. at 48:9-17.

19. Plaintiff has no knowledge of why Novartis provided Mr. Zuieback with a higher annual salary at the time of hiring. *Id*. at 53:9-13.  Plaintiff does not know why or how Novartis determined her level of compensation versus what it paid Mr. Zuieback.  *Id.* at 192:5-9.

20. Plaintiff has no knowledge of Mr. Zuieback's experience level at his prior employer, has never seen his resume, and has no knowledge of why Novartis hired Mr. Zuieback. *Id*. at 55:20-56:24; 74:4-75:8.

21. Plaintiff's prior employer before she came to Novartis was Pensacola Apothecary, a very small company with approximately 20 sales representatives. *Id.* at 87:8-21; Exhibit 9, L. Littlewood Resume.

22. Plaintiff does not have an MBA and did not start any schooling for an MBA.  Exhibit 1, Plaintiff's Depo., 98:22-99:2.

23. Plaintiff has no evidence as to how Novartis based its compensation decision for Plaintiff, Mr. Zuieback, or any other employee. *Id*. at 105:10-25.

24. Plaintiff was ranked in the bottom ten percent of all sales specialists in 2017, 2018, and was set to receive an overall "1" rating in objectives for 2020.  Receiving an overall "1" rating either in Objectives (sales performance) or V&Bs renders an employee ineligible for a raise and Plaintiff's two prior "1" ratings in consecutive years impacted her salary.  *Id.* at 181:14-24; Exhibit 2, DiCicco Corp. Depo at 83:4-9; 84:6-16.

25. Plaintiff received a salary increase of two percent on July 20, 2020, to account for market data and internal pay alignment. Exhibit 1, Plaintiff's Depo., 182:12-16; Exhibit 14 to Plaintiff's Depo.

26. In 2020, Plaintiff received two disciplinary warnings for compliance violations for failure to comply with Novartis policy. Exhibit 6, B. Eastabrooks Decl. ¶ 16; Exhibit 1, Plaintiff's Depo., 108:24-109:19.

27. Mr. Zuieback did not engage in similar policy violations while employed by Novartis. Exhibit 6, B. Eastabrooks Decl. ¶ 17; Exhibit 1, Plaintiff's Depo., 134:9-12; 174:19-24.

28. Plaintiff agrees that Mr. Zuieback was a skilled sales representative for Novartis. *Id.* at 57:1-10.

29. Plaintiff agrees that Mr. Zuieback's employment history of 17 years for Merck was impressive, and that he did not move around from employer to employer prior to his employment at Novartis. *Id.* at 61:19-62:11.

30. Plaintiff also agrees that, like Mr. Zuieback's employment history, longevity with an employer shows value to that employer so that they do not have to re-train an employee. *Id.* at 62:14-18.

31. Plaintiff also acknowledged that a lot of business-related variables go into how to set sales compensation in the pharmaceutical sales area. *Id.* at 72:24-73:14.

32. As a result, Plaintiff further acknowledged that there are times when Novartis will adjust an employee's compensation based on market review to ensure their compensation for their position is competitive with their peer companies in the market. *Id.*

33. Novartis conducts this market analysis at the time an employee is offered employment. *Id.*

34. Plaintiff was ineligible for a salary increase in her last year of employment because she was near the bottom with regard to her performance. Exhibit 2, DiCicco Corp. Depo, 25:17-26:14.

35. Novartis' Compensation Team has the responsibility of building salary ranges based on its benchmarking of the company's peers in the marketplace. *Id.* at 29:3-16.

36. Plaintiff's and Mr. Zuieback's compensation for their positions were determined, in part, based off of their qualifications and assessment of their ability to do the job, as determined through the interview. *Id.* at 30:6-31:5.

37. Novartis considers multiple issues when determining an employee's compensation, including for Plaintiff and Mr. Zuieback, among other factors, discipline, issues with compliance, performance, and commitment to Novartis' values. DiCicco Corp. Depo., Exhibit 2 and Exhibit 2, DiCicco Corp. Depo., 31:11-32:9.

38. Novartis reviews all employee compensation, including Plaintiff's and Mr. Zuieback's

compensation, on an annual basis, as reviewed by their manager. *Id.* at Depo., 34:21-35:3.

39. If an employee is not sufficiently performing, they will not receive an annual compensation increase. *Id.*

40. John Gatrell, a Senior Area Business Leader at Novartis who started in July 2019, led a team of 10 Sales Specialists in Colorado and other states, including supervising Plaintiff and the later Mr. Zuieback. Exhibit 4, Gatrell Depo., 8:14-2; 10:2-7; 12:2-21; 21:3-20.

41. Plaintiff and Mr. Zuieback worked together for sales responsibilities in the same territory (Fort Collins, Colorado), but had different responsibilities. *Id.* at 31:25-32:15.

42. Plaintiff had several years of low sales performance, which resulted in her not receiving consistent merit compensation increases. *Id.* at 34:6-19.

43. The Compensation Team at Novartis determines the salary range for positions within the organization. Exhibit 2, DiCicco Corp. Depo., 33: 2-9; 49:17-50:2. People & Organizations (Human Resources) works with the Compensation Team to determine an associate's salary. Exhibit 10, T. Vannaman Depo., 18:2-24; Exhibit 2, DiCicco Corp. Depo., 33: 2-9; 73:3-10, 18-24.

44. The process for determining whether Plaintiff and Mr. Zuieback received an annual merit salary increase or bonuses were the same for both. Exhibit 10, T. Vannaman Depo. at 24:13-24.

45. That said, Plaintiff and Mr. Zuieback were in different roles, with Plaintiff a CV1

representative and Mr. Zuieback a CV2 representative, so they had different roles, different managers at times, different sales goals, different physicians they called upon, a different territory footprint, and they were ranked differently internally for purposes of compensation. *Id.* at 25:1-14; 60:21-61:4; 63:10-13; 81:8-16.

46. The difference in Plaintiff's versus Mr. Zuieback's starting salary was based on their relatively different years of experience with different employers, Mr. Zuieback's advanced degree (an MBA), and a proven track record of performance prior to his employment with Novartis. *Id.* at 42:8-18.

47. In 2020, Plaintiff was, on average, the lowest sales employee performer in her region and was in the bottom five percent of sales employees. *Id.* at 77:2-13.

48. In 2020, Plaintiff was consistently ranked in the bottom 10 percent of sales performance when compared to other Novartis sales representatives, at times ranking one or two away from the worst in performance. Exhibit 1, Plaintiff's Depo., 144:19-25.

49. Plaintiff's job description and Mr. Zuieback's job description were different, including differences in education requirements (Mr. Zuieback's stating that an "advanced degree" was "preferred," different recruiting teams were involved, etc.). Exhibit 11, Job Description; Exhibit 1, Plaintiff's Depo., 158:5-161:17.

50. Prior to their employment at Novartis, Mr. Zuieback received more awards for his sales performance than *Id.* at 162:24-163:24; 165:23-166:16.

51. A different hiring and recruiting team recruited and hired Mr. Zuieback than Plaintiff.

10

*Id.* at 171:14-19.

52. When she was hired, Ms. Littlewood had a bachelor's degree in bioscience, with her recent experience working in sales for smaller pharmaceutical companies.  Littlewood Resume.

53. Novartis determined Plaintiff's compensation at the time of hire based on her qualifications and experience. Exhibit 2, DiCicco Corp. Depo., 40:8-41:11.

54. Novartis considered Plaintiff's frequent job movement prior to working at Novartis and lack of experience in the specific Colorado market and industry in determining her compensation at the time of hire. *Id.* at 42:8-43:21.

55. When Plaintiff was hired, Novartis was building its sales team to sell specific cardiovascular products in a specific market, and Plaintiff's compensation was determined, in part, based on the business needs for that product and the market, which was determined by Novartis' compensation team. *Id.* at 49:17-50:2.

56. Plaintiff's prior education was considered as part of Novartis determining her initial salary when she started employment. *Id.* at 50:19-51:9.

57. Plaintiff was hired as a CV1 sales representative, and Mr. Zuieback was hired as a CV2 sales representative, so their responsibilities are different, and compensation differs as a result. *Id.* at 56:12-19.

58. If a sales employee receives a 1 in their performance review for either V&Bs  or sales performance, the employee is not eligible for a merit compensation increase. *Id.* at 83:4-9.

59. If a Sales Representative, like Plaintiff, is in the bottom ten percent of sales performance for the year, the representative will receive an overall "1" rating for their Objectives.  If a Sales Representative meets expectations of their sales performance, they receive a "2" for their Objectives.  If the Sales Representative is in the top ten percent of sales representatives for that year and territory, they receive a "3" for sales performance.. *Id.* at 84:6-85:7.

60. When hiring for the cardiovascular executive sales role, Novartis requires a bachelor's degree, but, when an applicant has an advanced degree, Novartis considers that as an added benefit to hiring the employee, which can reflect in their compensation. *Id.* at 122:23-123:21.

## III.   **ARGUMENT**

### A.   **Summary Judgment Standard.**

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." F.R.C.P. 56(a). "A fact is material if, under the governing law, it could have an effect on the outcome of the lawsuit." *Laul v. Los Alamos Nat. Labs.*, 765 F. App'x. 434, 440 (10th Cir. 2019) (internal citations omitted). Further, a "material fact" is part of a "genuine dispute" only "if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). Conclusory statements based merely on conjecture, speculation, or subjective belief do not constitute summary judgment evidence. *Bones v. Honeywell Int'l,*

*Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *Id.* In attempting to meet this standard, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant need simply point out to the Court a lack of evidence for the other party on an essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant has met its initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Id.* Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. Stated differently, the party must provide "significantly probative evidence" that would support a verdict in his favor. *Jaramillo v. Adams Cnty. Sch. Dist. 14*, 680 F.3d 1267, 1269 (10th Cir. 2012). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

**B.    <u>Summary Judgment Should Enter in Defendant's Favor on Plaintiff's Sole Claim Under the Equal Pay Act.</u>**

The EPA prohibits employers from discriminating against employees on the basis

of sex.  It also prohibits paying wages to employees at a rate less than the rate at which employees of the opposite sex earn for equal work.  29 U.S.C. § 206(d)(1).  The law defines equal work when the job requires equal skill, effort, and responsibility, and are performed under similar working conditions.  *Id*.  The employer can pay employees differently when such payments were based on a "seniority system; a merit system, a system which measures earnings by quality of production; or for any other factor other than sex."  *Id*.

To establish a *prima facie* case under the EPA a Plaintiff must show that: (1) she was performing work that was substantially equal to that of male coworkers, with "equality" being measured on the basis of the skills, duties, supervision, effort, and responsibilities of the jobs; (2) the conditions where the work was performed were essentially the same; and (3) the male employees were paid more. *Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1364 (10th Cir. 1997). "We do not construe the 'equal work' requirement of the EPA broadly, and we have stated that failure to furnish equal pay for 'comparable work' or 'like jobs' is not actionable. Rather, in order to prevail in such an EPA action, the jobs must be substantially equal in terms of skill, effort, responsibility, and working conditions." *Id*. When making this decision, the Court should not find an EPA violation for positions that are just "like or comparable work.*" Keller v. Crown Cork & Seal USA, Inc.*, 491 F. App'x. 908, 912 (10th Cir. 2012). It is not sufficient that some aspects of the two jobs are the same. *Id.*

Plaintiff cannot prove her *prima facie* case. Plaintiff asserts that she was paid a

lower base salary than another male sales specialist for allegedly doing the same job. *See* Third Am. Compl., ¶¶ 22, 27. This is not true. As fully described in the above Undisputed Statement of Facts, Plaintiff and Mr. Zuieback's work was not substantially similar. Plaintiff and Mr. Zuieback held different roles and worked in different clinical areas with regard to the medical providers they approached and sold to. Moreover, they also, at times, worked different territories and, as a result of their different positions, the level of effort and responsibilities for their positions was different.  Plaintiff cannot prove this necessary element of her *prima facie* case.  Defendant thus is entitled to summary judgment on this basis alone.

If, *arguendo*, Plaintiff has established a *prima facie* case, which Novartis denies, Novartis may show that the pay disparity was justified by one of the four "affirmative defenses" identified in the statute: "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex.*" Riser v. QEP Energy*, 776 F.3d 1191, 1198 (10th Cir. 2015) (quoting 29 U.S.C. § 206(d)(1)); *see also Cnty. of Wash. v. Gunther*, 452 U.S. 161, 168 (1981) (describing these as the EPA's "four affirmative defenses"). "To meet this burden, an employer must 'submit evidence from which a reasonable factfinder could conclude not merely that the employer's proffered reasons could explain the wage disparity, but that the proffered reasons do in fact explain the wage disparity.'" *Riser*, 776 F.3d 1191, 1198 (quoting *Mickelson v. N.Y. Life Ins. Co.*, 460 F.3d 1304, 1312 (10th Cir. 2006)). To obtain summary judgment on an affirmative defense, the employer must

"prove at least one affirmative defense so clearly that no rational jury could find to the contrary." *Mickelson*, 460 F.3d at 1311 (citation omitted).

"Factors like education and experience are considered as a defense to an employer's liability rather than as part of a plaintiff's *prima facie* case." *Nazinitsky v. Integris Baptist Med. Ctr., Inc.*, No. CV-19-043, 2020 WL 1957914 (W.D. Ok. April 23, 2020)(quoting *Beck-Wilson v. Principi*, 441 F.3d 353, 362–63 (6th Cir. 2006) (citations omitted). The 10th Circuit agrees. *Casalina v. Perry*, No. 16-2264, 708 F. App'x 938, 942 (10th Cir. 2017)(paying male employee more because of "greater experience and education" not pretext for discrimination under EPA). Several of these factors show why Novartis paid Mr. Zuieback a higher base salary, including when he started his position in 2016.

First, Mr. Zuieback was more experienced when he entered the position. He had 17 consecutive years of experience with Merck, one of Novartis' top competitors. Plaintiff had less applicable, relatable experience and her prior employment was with smaller, less comparable companies. B. Eastabrooks Decl. ¶ 10-11; J. Lawson Decl. ¶¶ Decl. 10-11. An experience differential is held to constitute an affirmative defense sufficient to grant summary judgment. *Casalina v. Moniz*, No. 13-535, 2016 WL 7486190, at *7 (D. N.M Oct. 27, 2016) (finding affirmative defense was met because male comparator was "significantly more experienced" because he had 10 years more experience); *Brownlee v. Gay & Taylor, Inc.*, 642 F. Supp. 347, 362 (D. Kansas 1985) ("Gay & Taylor did not discriminate when it paid more experienced managers more than

plaintiff was paid"). Indeed, sister courts have also recognized the <u>quality</u>, not just the quantity, of experience matters. In *Casalina*, the male comparator had several years' experience working for the federal government where plaintiff did not. This was a factor in the defendant's favor because the position was with the federal government. In the instant case, Mr. Zuieback had 17 years of pharmaceutical sales experience, all of which was with a comparable large pharmaceutical company, that Plaintiff did not have. Novartis is therefore entitled to an affirmative defense and summary judgment because Mr. Zuieback's experience, not Plaintiff's gender, was the reason for the pay disparity.

Second, Mr. Zuieback has an advanced degree, specifically a Master of Business Administration, and Plaintiff does not.  Having an advanced degree is held to be a sufficient reason to pay a male comparator more under the EPA.  *Pinkard v. Hilti, Inc.*, No. 11-CV-454-JED-PJC, 2013 WL 2634938, at *6 (N.D. Okla. June 11, 2013).  The Tenth Circuit has previously stated that paying an employee more because of education constitutes an affirmative defense under the EPA.  *Casalina v. Perry*, No. 16-2264, 708 F. App'x 938, 942 (10th Cir. 2017). This difference in education level was also a reason for the pay disparity, not Plaintiff's gender, and, as a result, Novartis is entitled to summary judgment.

Third, Mr. Zuieback was recruited from a top competitor of Novartis where he had a higher base salary and was foregoing both a merit increase and bonus, compared to Plaintiff who was working at a small pharmaceuticals company with a lower base salary. Exhibit 2, DiCicco Corp. Depo, 50: 14-18; 61:13-20; 62:7-12; Exhibit 6, B. Eastabrooks

Decl. ¶¶ 10-11, 14; Exhibit 7, J. Lawson Decl. ¶¶ 10-11, 14 .  Mr. Zuieback also had significant leadership experience with local Colorado community organizations along with significant local Colorado sales experience, as well as his 17 consecutive years' experience at Merck, that Novartis valued and that Plaintiff lacked. Exhibit 6, B. Eastabrooks Decl. ¶ 12; Exhibit 7, J. Lawson Decl. ¶ 12; Exhibit 5, J. Zuieback Resume. All of these factors resulted in higher pay for Mr. Zuieback due to his credentials, community involvement, and prior salary. Exhibit 6, B. Eastabrooks Decl. ¶¶ 10-15;. "[W]here an employer sets a new employee's salary based upon that employee's previous salary and the qualifications and experience the new employee brings, the defendant has successfully invoked the [EPA's] affirmative defense." *Angove v. Williams-Sonoma, Inc.*, 70 F. App'x. 500, 508 (10th Cir. 2003).  An employee's "connection to the community" is furthermore a reason other than sex under the EPA. *Id*.  Mr. Zuieback's higher prior salary, high level experience, and connection to the community all warrant summary judgment here.

Fourth, a plaintiff's "performance problems" are also a sufficient basis for a pay differential. *Dolin v. ThyssenKrupp Elevator Corp.*, No. 16-529, 2019 WL 452740, at *11 (D. N.M. Feb. 5, 2019) (series of disciplinary problems for female employee was sufficient to establish affirmative defense). Although both Plaintiff and Mr. Zuieback illustrated poor sales performance at times during the course of their employment, the record shows that Plaintiff had performance and compliance problems that resulted in the issuance of discipline in 2020. Although these disciplinary issues did not impact their

starting base salary, it would impact any alleged lack of merit increase Plaintiff may claim near the end of her employment. Mr. Zuieback did not have disciplinary issues like Plaintiff. This reason also provides a basis for any pay disparity related to raises, although, to be clear, Plaintiff does not claim that she was unlawfully denied merit increases related to Mr. Zuieback.   Exhibit 1, Plaintiff's Depo. p. 262:1-263:8. Regardless, these disciplinary issues further explain any pay disparity, unrelated to Plaintiff's sex.

Ultimately, Novartis exerted significant time and effort to accurately determine Plaintiff's and Mr. Zuieback's compensation, including starting salary, based on a number of market and peer review factors, all entirely unrelated to Plaintiff's and Mr. Zuieback's sex. Even more, Mr. Zuieback enjoyed significant prior experience in the sophisticated pharmaceutical sales industry, much beyond Plaintiff's, as well as higher educational credentials. In addition, Plaintiff's performance and conduct issues near the end of her employment, resulting in discipline, stand out and apart from Mr. Zuieback's lack of disciplinary concerns while he was employed. When reviewing the undisputed facts, Plaintiff cannot prove her sole claim under the Equal Pay Act, and the Court should dismiss her Complaint with prejudice.

IV.     **CONCLUSION**

WHEREFORE, the Defendant requests that the Court enter an order granting summary judgment as to Plaintiff's claim and dismiss the case with prejudice.

Respectfully submitted this 18th day of December 2023.

                    BAKER & HOSTETLER LLP

                    */s/ Nathan A. Schacht*
                    Nathan A. Schacht, Bar No. 42580
                    1801 California Street, Suite 4400
                    Denver, CO 80202-2662
                    Telephone: 303.764.4029
                    Facsimile: 303.861.7805
                    Email: nschacht@bakerlaw.com


                    M. Scott McIntyre
                    312 Walnut Street, Suite 3200
                    Cincinnati OH 45202-4074
                    Telephone: 513.852.2622
                    Facsimile: 513.929.0303
                    Email: smcintyre@bakerlaw.com

                    *Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that a copy of the foregoing was filed with the Court via the CM/ECF system, which will send notice to counsel for Plaintiff:

John Thomas Harrington, Jr.
Robert Scott Oswald
The Employment Law Group, P.C.
1717 K Street, N.W., Suite 1110
Washington, DC 20006
Telephone: 202-261-2830
Facsimile: 202-261-2835
Email: tharrington@employmentlawgroup.com
        soswald@employmentlawgroup.com

*Attorneys for Plaintiff*

/s/ Nathan A. Schacht
Nathan A. Schacht

21