**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.1:21-cv-02559-CMA-SPB

LAURIE LITTLEWOOD,

      Plaintiff,

   v.

NOVARTIS PHARMACEUTICALS CORP.,

      Defendant.

---

**PLAINTIFF LAURI LITTLEWOOD'S OPPOSITION TO DEFENDANT NOVARTIS
PHARMACEUTICAL CORPORATION'S MOTION FOR SUMMARY JUDGMENT**

---

Dated: January 9, 2024           Respectfully submitted,


                       /s/   John T.  Harrington
                       John T. Harrington
                       R. Scott Oswald
                       The Employment Law Group, P.C.
                       1717 K Street NW, Suite 1110
                       Washington, D.C. 20006
                       (202) 261-2830 (telephone)
                       (202) 261-2835 (facsimile)
                       tharrington@employmentlawgroup.com
                       soswald@employmentlawgroup.com
                       *Counsel for Plaintiff*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES……………………………………………………….………...i

LIST OF EXHIBITS……..……………………………………………………….…………ii

INTRODUCTION.………………………………………………………….………………1

RESPONSE TO STATEMENT OF UNDISPUTED MATERIAL FACTS………..………1

STATEMENT OF ADDITIONAL DISPUTED FACTS……………………….......…12

ARGUMENT.…………………………………………………………………..………14

    A.  Legal Standard……………………………………………………………..…14

    B.  Novartis failed to meet its ultimate burden of persuasion………………...…..15

        1)  Littlewood established a prima facie case under the EPA…………..…15

        2)  Novartis failed to establish an affirmative defense…………………..16

    CONCLUSION.…………………………………………………………………......…20

## TABLE OF AUTHORITIES

Page(s)

Cases

*Angove v. Williams-Sonoma, Inc.*,
  70 F. App'x 500 (10th Cir. 2003) ................................................................. 20
*Bones v. Honeywell Int'l, Inc.*,
  366 F.3d 869 (10th Cir. 2004) ..................................................................... 15
*Casalina v. Moniz*,
  2016 WL 7486190 (D. N.M. Oct. 27, 2016) ............................................... 18
*Casalina v. Perry*,
  708 F. App'x 938 (10th Cir. 2017) .............................................................. 19
*Mickelson v. New York Life Ins. Co.*,
  460 F.3d 1304 (10th Cir. 2006) ...................................................... 15, 16, 17
*Pinkard v. Hilti, Inc.*,
  2013 WL 2634938 (N.D. Okla. June 11, 2013) .......................................... 19
*Riser v. QEP Energy*,
  776 F.3d 1191 (10th Cir. 2015) ...................................................... 16, 18, 19
*Rizo v. Yovino*,
  950 F.3d 1217 (9th Cir. 2020) ..................................................................... 19
*Stanziale v. Jargowsky*,
  200 F.3d 101 (3rd Cir. 2000) ....................................................................... 15

Statutes

29 U.S.C. § 206(d)(1) .................................................................................... 15

Rules

Fed.R.Civ.P. 56(c) ......................................................................................... 15

**LIST OF EXHIBITS**

| Exhibit No. | Description |
|---|---|
| 1 | Deposition Transcript of Lauri Littlewood |
| 2 | 30(b)(6) Deposition Transcript of Novartis Pharmaceuticals |
| 3 | Littlewood Offer Letter |
| 4 | New Offer Data Form |
| 5 | Littlewood Position Description |
| 6 | Zuieback Position Description |
| 7 | Zuieback Offer Letter |
| 8 | Defendant's Responses to Plaintiff's Requests for Admission |
| 9 | Deposition Transcript of Tim Vannaman |
| 10 | Deposition Transcript of John Gatrell |
| 11 | Lauri Littlewood's Resume |
| 12 | Declaration of Joshua Zuieback |

**INTRODUCTION**

Plaintiff Lauri Littlewood files this memorandum in opposition to Defendant Novartis Pharmaceuticals Corporation's Motion for Summary judgment filed on December 18, 2023. Dkt. 85. As explained below, Littlewood established a *prima facie* case under the EPA and Novartis failed to prove the pay disparity was justified. Littlewood sufficiently established her work was substantially equal to the work of Josh Zuieback, her male comparator. They held the same job title, serviced the same territory, and sold the same drug. Their job duties in their respective position descriptions were virtually identical. They served mostly the same customers and often worked together on shared targets. Novartis failed to establish an affirmative defense so clearly that no rational jury could find to the contrary. Many of its justifications are based on disputed material facts; and Novartis failed to establish it relied on its proffered justifications when making compensation decisions.

**RESPONSE TO STATEMENT OF UNDISPUTED MATERIAL FACTS**

1.      Admitted. Littlewood seeks damages based on the difference in pay between her and Josh Zuieback, a male, for the five years they worked for Novartis. Exhibit 1, Deposition of Lauri Littlewood at 262:23-264:11.

2.      Denied that Novartis followed its policy. Novartis failed to compensate Littlewood equally for doing the same job as Zuieback. Ex. 1 at 50:20-51:15.

3.      Admitted that external market data is one factor used by Novartis to determine compensation in addition to internal pay alignment. Ex. 2, 30(b)(6) Deposition of Novartis at 71:18-76:14.

4.      Admitted.

5.      Admitted, noting Littlewood's job description describes her title as "Cardio Executive Specialist" as opposed to "Executive Sales Specialist." Ex. 3, Littlewood Offer Letter. Further, the Novartis requisition form for Littlewood's position describes her position as "Cardiovascular Sales Specialist" and as "Cardio Sr. Specialist." Ex. 4, New Offer Data Form.

6.      Admitted that this was one of Littlewood's several job duties. Littlewood's position description lists other duties (implementing sales strategies for approved Cardiovascular (CV) products; and developing professional relationships with cardiology). Ex. 5, Littlewood Position Description.

7.      Denied in part. Admitted as to Zuieback's salary and position title, noting Zuieback's position is also referred to as "Cardiovascular Executive Sales Specialist" and as "Cardio Sales Specialist." Ex. 6, Zuieback Position Description; Ex. 7, Zuieback Offer Letter. Denied as to Zuieback's role being different from Littlewood's. Novartis admitted Littlewood and Zuieback held the same job title, serviced the same territory, and sold the same drug. Ex. 8, Response to Pl.'s Request for Admission, No. 22; Ex. 9, Deposition of Tim Vannaman at 77:22-81:25. Vannaman agreed Littlewood and Zuieback held the same job title. Ex. 9 at 77:21-81:25. Littlewood and Zuieback worked in the same territory and would collaborate on shared targets. Ex. 10, Deposition of John Gatrell at 27:4-29:23. The vast majority of physicians Littlewood and Zuieback called on were the same. Ex. 1 at 67:22-68:5. Zuieback and Littlewood's customer lists were very similar and the vast majority of their customers were the same. *Id.* at 65:16-66:7. Littlewood and Zuieback both called on the SCL physicians, and on the cardiology groups in Thornton, Lafayette, the Banner clinics in Greeley, Loveland and Fort Collins.

*Id.* at 66:8-21. Between one to two times each month, Zuieback and Littlewood were in the same doctor's office with the same customer. *Id.* at 59:23-60:7.

8.      Admitted.

9.      Admitted.

10.      Denied. Zuieback's position description notes an advanced degree is a "plus" and a bachelor's degree is required. Ex. 6. Merck was not one of Novartis's competitors in cardiology. Ex. 1 at 63:9-24; Ex. 12, Josh Zuieback Declaration at 2-3.

11.      Denied. Littlewood was more qualified than Zuieback in that Littlewood had more work experience in the pharmaceutical industry. Ex. 1 at 61:5-14. Zuieback had about 18 to 19 years of experience and Littlewood had about 25 years. *Id.* at 54:5-12. Littlewood had both hospital and clinic-based experience, and also had seven years of cardiology experience. Zuieback had no cardiology experience. *Id.* at 61:5-14. Merck was not one of Novartis's competitors in cardiology. *Id.* at 63:9-24. Before Littlewood came to Novartis, she had experience personally launching pharmaceutical products in a similar manner to which Littlewood launched Entresto. *Id.* at 93:19-94:14 Littlewood launched 12 drugs, including cardiovascular drugs, for Roche. *Id.* Littlewood also worked for Lilly, Astellas, and Pfizer. *Id.* Littlewood worked with Hoffmann-La Roche for 14 years. *Id.* at 168:7-14.

12.      Admitted. But other factors such as time in the industry, experience, and cardiovascular experience factor into a sales representative's salary. *Id.* at 72:6-73:9.

13.      Denied. Zuieback's position description does not refer to local leadership involvement with community organizations as a minimum or preferred requirement. Littlewood had experience in formalized referrals at Astellas, Alpharma and Eli Lilly in

the Fort Collins area. Ex. 2 at 40:8-41:11. Unlike Zuieback, prior to her employment with Novartis, Littlewood launched over ten drugs. Ex. 1 at 95:3-96:18. Littlewood also launched an antibiotic and a cardiovascular drug called Posicor. *Id.* Littlewood sold sCoreg shortly after it was launched; this was similar to selling Entresto. *Id.* Additionally, as the medical center representative at Hoffmann-La Roche, Littlewood was the representative for all of their products for Baylor College of Medicine and affiliated hospitals. *Id.* at 204:13-206:5. While working for Hoffmann-La Roche, Littlewood won awards in 1994, 1997, 1999, and 2000. *Id.* at 328:2-329:2.

14.     Denied. Littlewood attempted to negotiate a higher salary. *Id.* at 88:18-89:22. And Novartis did not consider the bonus potential Littlewood earned as total compensation in determining her base pay at Novartis. *Id.* at 84:22-85:23.

15.     Denied. In making compensation determinations, both values and behaviors and sales performance are weighted equally at Novartis. Ex. 2 at 77:15-83:9.

16.     Admitted.

17.     Admitted. Littlewood was the only person working in her territory (Northern Colorado, Wyoming and Montana) at Novartis when she was hired, and no other Novartis sales representatives were working in this sales territory for cardiovascular when she was hired. Ex. 1 at 197:17-199:14. The drug that Littlewood was responsible for was just launched when Littlewood was hired. *Id.*

18.     Admitted that market conditions Novartis faced in hiring sales employees in 2015 were not known to Littlewood at the time of her deposition.

19.    Admitted. Novartis did not disclose information regarding the hiring of Zuieback to Littlewood, and Littlewood was only aware of the pay discrepancy after she was terminated. *Id.* at 285:13-288:10; 192:5-9.

20.    Denied that Littlewood had no knowledge of Zuieback's prior experience. She knew most of his experience at Merck was in vaccines and knew she had more cardiovascular experience than him. *Id.* at 73:16-74:8; Ex. 12 at 5. Admitted Littlewood has little personal knowledge of facts related to his hiring other than those obtained through discovery in this matter. And from the time Gatrell joined Novartis through Zuieback's termination, Gatrell had no knowledge of Zuieback's post-high-school experience or his pre-Novartis work experience. Ex. 10 at 25:16-26:10. Gatrell was given no explanation as to why Zuieback's salary was higher than Littlewood's. *Id.* at 50:23-51:20.

21.    Admitted that Pensacola Apothecary was Littlewood's prior employer; but denied as to any implication Littlewood had no other experience. Littlewood worked for Hoffmann-La Roche, Eli Lilly & Co., Pfizer, and Astellas Pharmaceuticals. Ex. 11, Littlewood Resume; Ex. 2 at 40:8-41:11; Ex. 1 at 95:3-96:18.

22.    Admitted.

23.    Denied. Littlewood received information in discovery regarding how Novartis made its compensation decisions. For Littlewood and Zuieback's positions, at the time of hire, an offer was based on qualifications and the assessment of the new hire's ability to do the job. Ex. 2 at 29:17-31:5. And internal pay alignment (refers to understanding where Novartis's employees are in reference to their peers) was one factor considered in making compensation decisions. *Id.* at 17:16-23:25, 29:17-32:16.

5

24.    Admitted as to Littlewood's ranking in 2017 and 2018; denied as to Littlewood being set to achieve a 1 in 2020. Littlewood never received an official ranking in 2020. Ex. 1 at 181:18-21. Also denied that receiving a 1 rating renders an employee ineligible for a raise as Littlewood received a salary increase in July 2020. Ex. 10 at 32:16-37:12. And DiCicco testified data can be cut in different ways to help promote performance for any individual. "It is all how you cut and interpret the data." Ex. 2 at 101:20-102:7. Zuieback also received a 1 in objectives in 2017 and in 2018. *Id.* at 102:24-106:12.

25.    Admitted that Littlewood received a salary increase on July 20, 2020; denied as to the rationale for the salary increase. Gatrell said the reason was to ensure competitiveness within the market but Littlewood received no other salary increases prior to her termination. Ex. 10 at 32:16-37:12.

26.    Admitted Novartis documented Littlewood's compliance issues after Littlewood had written emails about how Novartis was handling COVID. Ex. 1 at 254:25-255:24. Novartis rates employees on a scale of 1 to 3, with 3 being the highest; this highest rating is given to about 10 to 15% of sales representatives. Third Amended Complaint (Dkt. 53) ¶ 9. Littlewood was always rated a 2 or better for values and behaviors. *Id.* ¶ 11. Novartis's policy around how to submit a convention had changed between 2017 and 2020. Ex. 1 at 112:11-114:19. Littlewood included a vegan meal in the head count that she ordered but did not witness the physician consume. *Id.* at 122:16-126:12.

27.    Admitted. Littlewood is unaware of any policy violations by Zuieback.

28.    Admitted.

29.    Admitted.

30.     Admitted, noting Littlewood was employed by Hoffman-La Roche for 14 years. Ex. 1 at 168:7-14.

31.     Admitted that, according to Littlewood, factors such as time in the industry, experience, and cardiovascular experience factor into a sales representative's salary. *Id.* at 72:6-73:9.

32.     Admitted.

33.     Admitted that Novartis claims it conducts a compensation-related market analysis when an employee is hired but denied as to hiring being the only time such an analysis is conducted. Novartis purportedly does compensation reviews to make sure it stays competitive and looks at different metrics such as Pay for Performance. Ex. 10 at 32:16-35:1. Managers review salaries on an annual basis. Ex. 2 at 32:17-35:7.

34.     Denied. Littlewood never received an official ranking in 2020. Ex. 1 at 181:18-21.

35.     Denied. Novartis provides conflicting and inconsistent information regarding how salary ranges are built. DiCicco testified Novartis's Compensation Team builds salary ranges, and Vannaman testified recruiters are involved in determining salary ranges. Ex. 9 at 29:7-33:22.

36.     Admitted.

37.     Admitted, noting DiCicco testified internal pay alignment is also considered. Ex. 2 at 29:17-32:16.

38.     Admitted.

39.     Denied. Gatrell testified Littlewood received a salary increase even when she had purportedly low performance. Ex. 10 at 32:16-37:12.

40.     Admitted.

41.     Admitted that Littlewood and Zuieback worked together for sales in the same territory. Denied as to Littlewood and Zuieback having different responsibilities. Littlewood and Zuieback's job descriptions and job duties were virtually identical. Ex. 1 at 324:22-325:14; Ex. 12 at 2-3. Littlewood and Zuieback had an almost-identical customer list. Ex. 1 at 58:7-12. Littlewood testified that nine out of ten bullet points describing their job duties in their respective position descriptions were identical, with only one bullet point being worded slightly differently. *Id.* at 315:22-321:20; Ex. 5; Ex. 6. The minimum requirements listed in Zuieback and Littlewood's job descriptions are the same. Ex. 1 at 322:5-324:25; Ex. 5; Ex. 6.

42.     Denied. Littlewood was not rated below a 1 for two consecutive periods and was never issued a performance improvement plan. Third Amended Complaint, (Dkt. 53) ¶ 16. If a Novartis employee is not getting annual merit increases, there could be opportunities for the person to be adjusted with the pay alignment. Ex. 2 at 17:16-23:25.

43.     Admitted. But salaries are looked at by managers on an annual basis. *Id.* at 32:17-35:7.

44.     Admitted.

45.     Denied. Littlewood and Zuieback's geographies were virtually identical, the list of customers they called on was virtually identical, and they were more closely mirrored than any other employees from other territories; and 85 percent of Littlewood's and Zuieback's customers were the same throughout their employment. Ex. 1 at 324:22-326:11. Their duties were almost identical and the minimum requirements in their job descriptions were the same. *Id.* at 315:22-324:25; Ex. 5; Ex. 6.

46.     Denied. Littlewood had more years in the industry than Zuieback. Ex. 1 at 53:9-13. Zuieback interviewed for the position for which Littlewood was hired but was not selected at that time. *Id.* at 170:20-171:3; Ex. 12 at 4.

47.     Denied. Littlewood was not evaluated for calendar year 2020. Ex. 8 at RFA No. 21.  Further, COVID-19 impacted how Littlewood's performance was calculated for 2020; sales representatives did not receive credit in their evaluations for the entire time they were in the field. Ex. 1 at 144:19-146:15.

48.     Denied. Novartis admitted Littlewood was not evaluated in 2020. Ex. 8 at RFA No. 21.  Littlewood never had a 2020 final review and was terminated before the end of 2020. Ex. 1 at 180:4-12.

49.     Denied. Nine out of ten bullet points describing Littlewood and Zuieback's job duties were identical, with only one bullet point being worded slightly differently. *Id.* at 315:22-321:20; Ex. 5; Ex. 6. The minimum requirements listed in their job descriptions are the same. Ex. 1 at 322:5-324:25; Ex. 5; Ex. 6.

50.     Denied. Littlewood received awards from Hoffmann-La Roche in 1994, 1997, 1999, and 2000. Ex. 1 at 204:13-206:5. And when Littlewood left Hoffmann-La Roche, she had won another national award, the President's Club. *Id.* Littlewood also received two President's Achievement awards, one Quota Trip with Eli Lilly, and a very high ranking with the launch of Flector Patch with Alpharma. *Id.* at 161:18-162:23. Littlewood also received a regional Special Achievement Award. *Id.* at 163:11-164:24.

51.     Denied. Brent Eastabrooks was involved in recruiting both Littlewood and Zuieback. *Id.* at 158:17-159:9. Novartis's recruiters are provided with a salary range by the compensation team for the roles for which they are hiring. Ex. 2 at 44:3-47:14.

52.     Admitted as to Littlewood's bachelor's degree but denied as to the characterization of her recent experience as sales for smaller pharmaceutical companies. Her experience included launching over ten drugs. Ex. 1 at 95:3-96:18. With Astellas, Littlewood launched Myrbetriq. *Id.* While working with Alpharma and Pfizer, Littlewood launched Flector and Embeda. *Id.* Littlewood also launched an antibiotic. *Id.* Littlewood launched a cardiovascular drug called Posicor, and sold sCoreg shortly after it was launched (similar to selling Entresto). *Id.*

53.     Admitted that Novartis considers qualifications and experience in determining compensation; denied as to these being the only factors Novartis considered. When Novartis makes an initial offer, there is always an understanding of the benchmarking and where employees fall relative to other employees. Ex. 2 at 17:16-25:9.

54.     Denied. Littlewood had about 25 years of industry experience. Ex. 1 at 54:5-12. Littlewood worked with Hoffmann-La Roche for 14 years. *Id.* at 168:7-14. Novartis thought it was good Littlewood had experience in formalized referrals at Astellas, Alpharma, and Eli Lilly in the Fort Collins area. Ex. 2 at 40:8-41:11. Jeremy Lawson was impressed that Littlewood had grown revenue at a previous company from zero to one million dollars and that was part of why Lawson hired Littlewood. Ex.1 at 199:15-200:16. Littlewood had more industry work experience than Zuieback. *Id.* at 61:5-14. Littlewood had experience personally launching pharmaceutical products in a similar manner to which Littlewood launched Entresto. Ex. 1 at 93:19-94:14. Littlewood launched 12 drugs including cardiovascular drugs for Hoffmann-La Roche; Littlewood also worked for Lilly, for Astellas, and for Pfizer. Id*.*

55.     Admitted that when Littlewood was hired, Novartis was building its team to sell specific cardiovascular products in a specific market. Admitted her experience with cardiovascular drugs factored into her compensation. Denied as to the compensation team solely determining her compensation, as Vannaman testified recruiters were involved. Ex. 9 at 29:7-33:22.

56.     Admitted.

57.     Denied. Littlewood and Zuieback's job descriptions, job duties, and minimum requirements were virtually identical. Ex. 1 at 321:21-325:14.

58.     Documents used by Novartis in the hiring process show both Littlewood and Zuieback's positions have the same job band designation, cost center designation, and involve the same HR Business Partner, Mr. Eastabrooks. Ex. 9 at 38:7-40:6.

59.     Denied. Novartis presents conflicting information; it claims she was a poor performer but received a salary increase on July 20, 2020. Ex. 10 at 32:16-37:12.

60.     Admitted.

61.     Admitted as to a bachelor's degree being a minimum requirement and an advanced degree being preferred. Denied as to an advanced degree reflecting in an employee's compensation. Vannaman claimed he had personal knowledge as to the reasons for the difference in Littlewood and Zuieback's base salary, which included Zuieback's advanced degree, but then testified he never reviewed Zuieback's resume; Vannaman never compared Littlewood's pre-Novartis work experience or her education to that of Zuieback or received that information from anyone. Ex. 9 at 28:15-29:6. Gatrell had no knowledge of Zuieback's post-high-school experience or pre-Novartis work experience. Ex. 10 at 25:16-26:10.

## STATEMENT OF ADDITIONAL DISPUTED FACTS

1.      Novartis looks at what peers in similar positions are being paid when an initial offer is made at hiring. Ex. 2 at 17:16-24:17.

2.      Littlewood was hired during a sales expansion. Brent Eastabrooks, the business partner who performed the hiring, and the recruiting team, knew what offers were being given to other sales representatives when hiring Littlewood. *Id.* at 47:15-49:6.

3.      Littlewood's base salary was approximately $20,000 less than Zuieback's at the time of their terminations. Ex. 8 at RFA No. 23. Littlewood's 2020 salary was $109,629.85 and Zuieback's was $133,540.03. Ex. 2 at 68:18-70:5, 71:2-17.

4.      If an employee is not getting annual merit increases and not moving with the benchmark over time, there can be opportunities for that employee's compensation to be adjusted within the pay alignment. Ex. 2 at 17:16-23:25.

5.      Littlewood's formal education at hiring was a BS in biomedical science and a minor in marketing from Texas A&M University with a 3.0 GPA. Ex. 2 at 50:19-51:2.

6.      From Gatrell's hiring in 2019, through Littlewood's termination in December 2020, Gatrell had no information about her post-high-school education and no knowledge of her prior employment. Ex. 10 at 24:2-25.

7.      Vannaman had no knowledge of what the pay designations in Littlewood's Offer Data Form (Ex. 4) were, had never seen those pay designations before, and did not know what the following terms referred to: job band, pay grade type, pay grade area, and pay grade level. Ex. 9 at 29:7-37:24; Ex. 4.

8.      The local job code information (GJFA Code/Job Code), the posting functional area, the job band, the HR core number (under position title), and the HR core

designation for position purpose are identical in Littlewood's position description (Ex. 5) and in Zuieback's position description (Ex. 6). Ex. 9 at 59:5-62:15; Ex. 5; Ex. 6.

9.      Gatrell has no knowledge of Littlewood's hiring process and never discussed Littlewood's hiring process with anyone. Ex. 10 at 13:18-14:12. Gatrell did not know who was involved in the decision to hire Littlewood. *Id.* at 16:17-24.

10.     Gatrell did not know who was involved in determining Littlewood's base salary when she became employed by Novartis. Ex. 10 at 16:24-17:8.

11.     Littlewood was always rated a 2 or better for values and behaviors by Novartis in her employee evaluations. Ex. 8 at RFA No. 5.

12.     The job description for the position that Littlewood was hired into is the job description for both CV1 and CV2 positions. Ex. 2 at 107:9-118:2. Zuieback was Littlewood's CV2 partner at Novartis. *Id.* at 83:10-89:1; Ex. 10 at 27:4-29:23.

13.     Littlewood and Zuieback decided between themselves who would take the lead regarding access with customers; Littlewood would primarily be the lead though at times Zuieback would be the lead. Ex. 1 at 59:4-22.

14.      Littlewood had a larger geography than Zuieback. *Id.*

15.     At her previous employers, Littlewood had no compliance issues, no discipline or coaching issues, and stellar performance reviews. *Id.* at 225:4-16.

16.     Gatrell was not involved in determining whether Littlewood would receive any salary increases. Ex. 10 at 17:16-25; 18:1-8.

17.     Prior to their terminations, no one at Novartis ever told Gatrell they had compared Littlewood's education to Zuieback's education, or that they had compared their pre-Novartis work experience. Ex. 10 at 26:11-27:3.

18.     Gatrell was not given any explanation by anyone as to why Zuieback's salary was higher than Littlewood's. *Id.* at 50:23-51:20.

19.     Prior to her termination, no one ever told Vannaman the factors involved in determining Littlewood's initial salary. Ex. 9 at 11:24-12:17, 15:14-24.

20.     Every chair that a person sits on at Novartis is tied to a job code, a position number and a job family, and that job code drives an employee's compensation. Ex. 2 at 108:25-113:9.

21.      Vannaman did not know Zuieback or Littlewood's base salary when they were terminated. Ex. 9 at 22:10-19, 77:22-82:17. Vannaman did not know what Littlewood's base salary was when she joined Novartis. *Id.* at 35:14-36:6.

22.     Prior to their terminations, Vannaman was not provided any explanation why Zuieback was paid a higher base salary than Littlewood. *Id.* at 42:1-7.

23.     Vannaman had no knowledge of Zuieback's $5,000 signing bonus and no information as to why he would have received a signing bonus. Ex. 9 at 41:14-25.

24.     In 2018, both male and female sales representatives at Novartis raised the issue that compensation was being unfairly computed, impacting the Western Region at Novartis. Ex. 1 at 119:13-121:6. Sales representatives, including Littlewood, raised concerns about how performance metrics were tabulated for sales representatives but Novartis took no action to address these concerns. *Id.* at 239:20-247:21.

**ARGUMENT**

**A.  Legal Standard**

Summary judgment is only appropriate when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c); *Mickelson v. New York Life Ins. Co.*, 460 F.3d 1304, 1310 (10th Cir. 2006). There is no genuine issue of material fact only if the evidence, construed in the light most favorable to the non-moving party, is such that no reasonable jury could return a verdict for the non-moving party. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

### B. Novartis failed to meet its ultimate burden of persuasion.

Equal Pay Act claims proceed in two steps. *Mickelson*, 460 F.3d at 1311. The plaintiff has an initial burden to establish a *prima facie* case by demonstrating employees of the opposite sex were paid differently for performing substantially equal work. *Id*. If the plaintiff meets this burden, the burden of persuasion and production shifts to the defendant to prove the disparity was justified by one of four permissible reasons. *Id*. These reasons are: (1) a seniority system; (2) a merit system; (3) a pay system based on quantity or quality of output; or (4) a disparity based on any factor other than sex. *Id*.; 29 U.S.C. § 206(d)(1). Because the employer's burden in an EPA claim is one of ultimate persuasion, "in order to prevail at the summary judgment stage, the employer must prove at least one affirmative defense so clearly that no rational jury could find to the contrary." *Stanziale v. Jargowsky*, 200 F.3d 101, 107 (3rd Cir. 2000) (internal quotations omitted). As demonstrated below, Littlewood established a *prima facie* case under the EPA; and Novartis failed to prove this disparity was justified by one of the permissible reasons so clearly that no rational jury could find to the contrary.

### 1) Littlewood established a *prima facie* case under the EPA.

To establish a *prima facie* case under the EPA, a plaintiff must demonstrate that: (1) she was performing work which was substantially equal to that of the male

employees considering the skills, duties, supervision, effort, and responsibilities of the jobs; (2) the conditions where the work was performed were basically the same; and (3) the male employees were paid more under such circumstances. *Riser v. QEP Energy*, 776 F.3d 1191, 1196 (10th Cir. 2015).

Littlewood established the latter two elements. Dkt. 85, Def.'s Mot. for Summ. J. (MSJ) at 14-15. But Novartis argues Littlewood and Zuieback's work was not substantially similar. *Id.* at 15. Work is "substantially similar" for EPA purposes if it requires "equal skill, effort, and responsibility." *Riser*, 776 F.3d 1196. While there is no precise definition of "equal skill, equal effort, or equal responsibility," a fact finder must take into consideration "the broad remedial purpose of the law." *Id*. Thus, "insubstantial or minor differences in the degree or amount of skill, or effort, or responsibility required for the performance of jobs will not render the equal pay standard inapplicable." *Id*.

Littlewood sufficiently established her work was substantially equal to Zuieback's work. They held the same job title, serviced the same territory, and sold the same drug. Ex. 8. Their job duties in their respective position descriptions were identical, with only one bullet point being worded slightly differently. Ex. 1 at 315:22-321:20; Exs. 5 and 6. They served mostly the same customers and often worked together on shared targets. Ex. 10; Ex. 1 at 66:8-68:5. Between one to two times each month, they were in the same doctor's office with the same customer. *Id.* at 59:23-60:7.

2) **Novartis failed to establish an affirmative defense**.

To prevail at summary judgment, an EPA defendant must first establish an affirmative defense as a matter of law. *Mickelson*, 460 F.3d at 1312. Then, the defendant "must produce sufficient evidence such that no rational jury could conclude

but that the proffered reasons *actually motivated* the wage disparity of which the plaintiff complains." *Id*. (emphasis added). Novartis asserts four factors to justify the pay difference between Littlewood and Zuieback. Def.'s MSJ at 13-19. These factors are experience, education, prior salary, and performance. *Id*. Further, Novartis asserts it paid Zuieback a higher starting salary because of his higher prior salary, his experience, and his education. To support this, Novartis exclusively relies on two self-serving declarations. Def.'s MSJ at 13-19. These self-serving declarations do not meet the high burden set out by the Tenth Circuit in *Mickelson*. *See* 460 F.3d at 1312-13 (employer failed to prove disparity was based on proffered reasons as a matter of law because there were no supporting contemporaneous documents). In addition to the self-serving nature of these declarations, the declarations contradict Novartis's own actions. Novartis argues it was compelled to pay Zuieback a higher starting salary because it viewed him as more qualified than Littlewood; yet Novartis hired Littlewood instead of Zuieback in 2015 when both applied for the same position. Ex. 1 at 170:20-171:3; Ex. 12 at 4.

 And there are critical weaknesses in each of Novartis's proffered justifications. First, Novartis incorrectly asserts "Zuieback was more experienced when he entered the position." Def.'s MSJ at 16. Littlewood had about 21 years of industry experience while Zuieback had only 18 to 19 years. Ex. 1 at 54:5-12. Littlewood also had more relevant experience than Zuieback in sales of cardiovascular drugs. Both of their positions involved sales of a cardiovascular medication, Entresto, to cardiologists. Ex. 5. Littlewood had seven years of sales experience focused on cardiology. Ex. 1 at 93:19-94:14. During this time, Littlewood helped several large pharmaceutical companies

launch 12 drugs, including cardiovascular drugs, in a similar manner to how Novartis launched Entresto. *Id*. On the other hand, Zuieback had no sales experience with cardiology and his former employer, Merck, was not Novartis's competitor in cardiovascular products. Ex. 1 at 61:5-14, 63:9-24; Ex. 12 at 5-6. Novartis also suggests Littlewood did not have experience working for a comparable large pharmaceutical company. Def.'s MSJ at 17. This is false. Littlewood worked for several large pharmaceutical companies such as Hoffmann-La Roche, Eli Lilly & Co., Pfizer, and Astellas. Ex. 11.

Novartis focuses on Zuieback's "consecutive years' experience" in a large pharmaceutical company to justify the pay difference. Def.'s MSJ at 17. Novartis provides no case to support that such an arbitrary factor constitutes an EPA affirmative defense. The court in *Casalina*, which Novartis cites, instead held the defendant was justified in paying the comparator more than the plaintiff because the comparator had more experience in the relevant position. *See Casalina v. Moniz*, No. 13-535, 2016 WL 7486190, at *7 (D. N.M. Oct. 27, 2016) (comparing comparator's years of experience as an industrial hygienist to plaintiff's years of experience). Nowhere in *Casalina* did the court analyze whether the comparator worked consecutively at one company prior to joining the defendant. *Id*. The Tenth Circuit held that an affirmative defense based on a "factor other than sex" must be "rooted in legitimate business-related differences in work responsibilities and qualifications for the particular positions at issue;" Novartis fails to explain how "consecutive years' experience" in one company relates to Zuieback's position. *See Riser v. QEP Energy*, 776 F.3d 1191 (10th Cir. 2015).

Second, Novartis argues Zuieback's higher salary was justified because of his advanced degree. But Novartis fails to establish how Zuieback's advanced degree demonstrates a legitimate business-related difference in his and Littlewood's work responsibilities or qualifications for the positions. In each case cited by Novartis, both the Tenth Circuit and the Northern District of Oklahoma instead held the defendants established affirmative defenses because the comparator had greater experience *and* education. *Pinkard v. Hilti, Inc.*, No. 11-CV-454-JED-PJC, 2013 WL 2634938, at *6 (N.D. Okla. June 11, 2013); *Casalina v. Perry*, No. 16-2264, 708 F. App'x 938, 942 (10th Cir. 2017). Such is not the case here. As demonstrated above, Littlewood had more experience than Zuieback and her experience was more relevant. *See supra* at 17. Moreover, both Littlewood and Zuieback had sufficient education to qualify for their positions as each position only required a bachelor's degree. Exs. 5 and 6.

Third, Novartis relies on Zuieback's prior salary to justify the difference. The Ninth Circuit recently held prior salary is not a "factor other than sex" because prior salary "is necessarily not a factor related to the job." *Rizo v. Yovino*, 950 F.3d 1217, 1231 (9th Cir. 2020). Citing the Tenth Circuit's opinion in *Riser*, the Ninth Circuit emphasized that it was not dissenting from the Tenth Circuit's position that prior pay is a valid affirmative defense if considered with other factors because, in such a case, prior salary "adds nothing to the employer's defense because any legitimate job-related factors can themselves defeat a prima facie EPA showing." *Rizo v. Yovino*, 950 F.3d 1217, 1230-31 (9th Cir. 2020) (citing *Riser*, 776 F.3d at 1199). Given the clarification by the Ninth Circuit, and the Tenth Circuit's position that the EPA precludes an employer from relying solely upon prior salary, Zuieback's prior salary cannot justify the difference; Novartis

failed to prove clearly that the difference was because of his experience and education. *See id.*; *Angove v. Williams-Sonoma, Inc.*, 70 F. App'x 500, 508 (10th Cir. 2003).

Fourth, Novartis argues the disparity was due to Littlewood's compliance problems. Def.'s MSJ at 18-19.[1] But Novartis increased Littlewood's base salary on July 20, 2020, based on "market data and internal pay alignment," even though Littlewood received two disciplinary warnings for minor compliance violations. Def.'s MSJ at 7 ¶ 25; Ex. 1 at 108:24-109:19. Zuieback, who did not receive any warnings for compliance violations, did not receive such a raise. Given these inconsistencies, Novartis fails to meet its heavy burden to show it paid Littlewood less because of "compliance issues."

In sum, Novartis failed to establish an affirmative defense so clearly that no rational jury could find to the contrary. Many of its justifications are based on disputed material facts, which alone makes summary judgment improper. Moreover, Novartis fails to establish it relied on its proffered justifications when making compensation decisions.

## CONCLUSION

Littlewood established a *prima facie* case and Novartis failed to prove the pay disparity was justified. Novartis failed to establish it relied on its proffered justifications, many of which are based on disputed material facts, when making compensation decisions. Novartis's Motion should be denied.

---

[1]     Novartis also argues the pay difference was due to Littlewood's performance. Def.'s MSJ at 18-19. But Novartis admits that both Littlewood and Zuieback "illustrated poor sales performance at times during the course of their employment." *Id.* at 18. Novartis cannot justify a pay discrepancy based on performance problems when it argues both employees had those problems.

Respectfully submitted,


/s/ John T. Harrington
John T. Harrington
R. Scott Oswald
The Employment Law Group, P.C.
1717 K St., NW, Ste. 1110
Washington, D.C. 20006-5345
Telephone: (202) 261-2830
Facsimile: (202) 261-2835
Email:  soswald@employmentlawgroup.com
tharrington@employmentlawgroup.com
*Attorneys for Plaintiff Lauri Littlewood*

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing was filed with the Court via the CM/ECF system, which will send notice to counsel for Defendant:

/s/ John T. Harrington
John T. Harrington